HISCOCK, COLLIN, CUDDEBACK, HOGAN and POUND, JJ., concur; SEABURY, J., concurs in result.

Judgment of conviction affirmed.

---

In the Matter of Proving the Will of EGBERT B. SEAMAN, Deceased.

FRANCES P. S. OAKLEY, Appellant; EGBERT B. SEAMAN et al., Respondents.

Will — marriage — testamentary provision designed to prevent marriage of testator's daughter with a designated person — when such provision valid and enforceable.

At common law there was no prohibition against testamentary conditions in restraint of marriage with particular classes of persons or specific persons, and such prohibitions have not only received the sanction of judicial authority, but are justified by sound reasoning. Hence, a condition which is designed to prevent the marriage of a testator's daughter with a particular individual named in the will is valid and enforceable.

*Matter of Seaman*, 170 App. Div. 971, affirmed.

(Argued April 10, 1916; decided April 25, 1916.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered October 22, 1915, which affirmed a decree of the New York County Surrogate's Court admitting to probate the will of Egbert B. Seaman, deceased, and declaring the provisions of the fourth, fifth, sixth and seventh paragraphs of said will to be in all respects valid.

The facts, so far as material, are stated in the opinion.

*Leo Fassler* for appellant. The conditions limiting the absolute gift and the trust created for the benefit of Fran-

[218 N. Y.] Opinion, per WILLARD BARTLETT, Ch. J. [April,

ces Oakley are illegal on the ground of public policy, as being equivalent to putting a price upon the head of a person and offering an inducement for the termination of his life. (Story on Cont. § 675; *Jones* v. *Randall*, Cowp. 37; *Ruse* v. *M. B. L. Ins. Co.*, 23 N. Y. 516; *Warnock* v. *Davis*, 104 U. S. 775; *Helmetag's Admr.* v. *Miller*, 76 Ala. 183; *Lord* v. *Dall*, 12 Mass. 115; *Fuller* v. *Met. L. Ins. Co.*, 17 Conn. 647; *Golden Rule* v. *People*, 118 Ill. 492; *Franklin L. Ins. Co.* v. *Hazzard*, 41 Ind. 116; *Metropolitan Life Ins. Co.* v. *Ellison*, 22 Kans. 199; *Union C. L. Ins. Co.* v. *Hilliard*, 63 Ohio St. 478; *Carson's Appeal*, 113 Penn. St. 438.)

*William W. Robison* and *Harry N. French* for respondents. The trust created by the 4th, 5th, 6th and 7th paragraphs of the will is in all respects a proper and valid trust. (*Crawford* v. *Russell*, 62 Barb. 92; *Banker* v. *Coons*, 40 App. Div. 572; *Ruse* v. *Mutual Ben. Life Ins. Co.*, 23 N. Y. 516; *Fowler* v. *N. Y. Ind. Ins. Co.*, 26 N. Y. 422; *Wright* v. *Mayer*, 47 App. Div. 604; *Shedlinsky* v. *Budweiser Brewing Co.*, 163 N. Y. 437; *Dunham* v. *Hastings Paving Co.*, 56 App. Div. 244; *Brien* v. *Stone*, 82 App. Div. 450; *Cohen* v. *Berlin & Jones Envelope Co.*, 9 App. Div. 425.)

WILLARD BARTLETT, Ch. J. This controversy relates to the validity of certain provisions in the last will and testament of Egbert B. Seaman, deceased, late of the city of New York, who died on the 27th of June, 1914. By his will, which was executed on February 15, 1912, he devised and bequeathed his entire estate to his executors and trustees to pay the net income thereof to his wife Maria T. Seaman during her life. Upon the death of his wife or upon his own death, in case she died first, he directed his executors and trustees to divide the principal of his estate into three equal shares, one of which he devised and bequeathed to his son Egbert B. Seaman, Jr., absolutely; the second share to his daughter Carrie L.

Eidlitz, absolutely; and the third share to his daughter Frances P. Oakley, widow of John B. H. Oakley, absolutely, "provided, however, that at the time of my decease my said daughter Frances P. Oakley shall be married to some person other than one Leo Fassler, who now resides in the city of New York and is there engaged in the practice of law, or provided that at the time of my death the said Leo Fassler is dead."

The will further provides in the fourth paragraph thereof that in the event that the testator's daughter Frances P. Oakley is unmarried at the time of his death and the said Leo Fassler is then living or she is married to the said Leo Fassler, his trustees shall retain the said third share in trust to pay over the net income thereof to his daughter Frances P. Oakley during her natural life. The fifth, sixth and seventh paragraphs of the will are as follows:

" *Fifth.* Should my said daughter, Frances P. Oakley, marry the said Leo Fassler, then upon her death, either with or without issue her surviving and leaving the said Leo Fassler her surviving, I hereby give, devise and bequeath the portion of my estate held in trust for my daughter, Frances P. Oakley, as aforesaid, and direct my Trustees to pay over and distribute the principal thereof, in equal shares, to my son, Egbert B. Seaman, Jr., and to my daughter, Carrie L. Eidlitz, to him, to her, their heirs, executors, administrators and assigns, absolutely and forever; and in the event that either or both of them shall have predeceased my said daughter, Frances P. Oakley, leaving issue him or her surviving, I give, devise and bequeath the share which the parent would have received to such issue, share and share alike, *per stirpes* and not *per capita.*

" *Sixth.* In the event that my said daughter, Frances P. Oakley, should marry the aforesaid Leo Fassler, and should survive him as his widow, then upon his death, leaving her surviving, I give, devise and bequeath and

direct my Trustees to pay over and deliver to my said daughter, Frances P. Oakley, the principal of the trust created for her benefit, to her and her heirs, executors, administrators and assigns forever, absolutely and without reserve.

" *Seventh.* In the event that my said daughter, Frances P. Oakley, remains unmarried and survives the said Leo Fassler, then upon the death of the aforesaid Leo Fassler, leaving her unmarried and surviving, I direct and empower my Trustees to pay over and deliver to my said daughter, Frances P. Oakley, the principal of the trust created for her benefit, to her and her heirs, executors, administrators and assigns forever, absolutely and without reserve."

Upon the proceedings in the Surrogate's Court for the probate of the will Mrs. Frances P. Oakley was represented by Mr. Leo Fassler, who contended that the will was invalid and illegal " as being equivalent to putting a price on the head of a person and offering an inducement for the termination of his life, and as such being contrary to public policy." The Surrogate's Court held that the testamentary provisions to which objection was thus made were in all respects valid and admitted the will to probate. The decree of that court has been affirmed by the Appellate Division.

There is no doubt that under the terms of Mr. Seaman's will the principal sum of the one-third of his estate, which is to be held in trust for the benefit of his daughter, Mrs. Oakley, cannot go to her absolutely as long as Mr. Fassler lives. She contends upon the present appeal, or rather Mr. Fassler contends in her behalf, that the conditions designed to prevent her marriage with him are void as against public policy because they put a price upon his life; because they violate the natural and inalienable rights of Fassler to security of life and liberty; and because they are in derogation of rights secured to his person by the Constitution of the United States and the

Constitution of New York. We are unable to perceive how they violate any constitutional right of Mr. Fassler; but the point that the conditions in restraint of marriage with him are invalid is intelligible, and one which the appellant is entitled to have considered.

Conditions in general restraint of marriage were regarded at common law as contrary to public policy, and, therefore, void. (*Hogan* v. *Curtin*, 88 N. Y. 162.) Notwithstanding the doubt intimated in the prevailing opinion in *Robinson* v. *Martin* (200 N. Y. 159), we think this rule still prevails in New York. In the case cited it was held that the will under consideration did not in fact contain any condition in general restraint of marriage. At common law, however, there was no prohibition against testamentary conditions in restraint of marriage with particular classes of persons or specific persons. "Conditions not to marry a Papist," says Mr. Jarman, "or a Scotchman; not to marry any but a Jew * * * have also been held good." (2 Jarman on Wills [6th ed.], p. 47.) In the present case the condition is designed to prevent the marriage of the testator's daughter with a particular individual who is named in his will; and such prohibitions have not only received the sanction of judicial authority but we think may be justified by sound reasoning. In *Graydon's Executors* v. *Graydon* (23 N. J. Eq. 229) Chancellor Zabriskie held that a condition imposed upon a bequest to a son of the testator that it should be void if within a stated time he should marry a daughter of a person named in the will was not unlawful as a restraint upon marriage; and this although it required the son, if he would obtain the bequest, to break an engagement of marriage into which he had entered before he knew of the provision in his father's will and, indeed, before the will was executed. "It is the duty of the courts," said the chancellor, "to favor this or any other legal means which a father may adopt to enforce the authority which the law, for wise

[218 N. Y.]  ˙ Opinion, per WILLARD BARTLETT, Ch. J.          [April,

purposes, has given to him over his minor children, and that regard for his wishes and counsel in the more important concerns of their lives after maturity, which the untrammeled testamentary power conferred by our law is calculated to secure." In *Cowley* v. *Twombly* (173 Mass. 393) the will under consideration by the court established a trust for the benefit of the testator's son, and provided that it should not continue for more than ten years after he should ˙cease to be the husband of the person who was then his wife, but that upon the termination of the trust by the death or divorce of his wife and the expiration of ten years or of less than ten years if the son should so elect, he should have all the trust property as his own, forever free from any trust and in fee. It was contended that the trust was void because it was against public policy as tending to break up the marriage relation between the testator's son and the son's wife. The Supreme Judicial Court of Massachusetts, speaking ·through ˑ Mr. Justice BARKER, said: "The scheme of the trust no more tended to induce the son improperly tó procure a divorce between himself ˑand his wife, than to induce him to procure her death. Either event would give the son an estate which otherwise he could not have. * * * There is no more likelihood or presumption that a divorce will be wrongfully brought about by one of the parties to a marriage in order to secure property, than that a death will be so occasioned. A testator no more offends public policy by simply making his bounty contingent upon the occurrence of a divorce than of a death." This language clearly implies than no legal objection exists to the action of a testator who makes the realization of a gift dependent upon the death of some other person than the final donee. In *Daboll* v. *Moon* (88 Conn. 387) a testamentary gift conditioned to take effect upon the death of the wife of the donee, or if he should obtain a divorce or become separated from her at the end of a year, or should

marry a good respectable woman within the year, was held not to be void as against the public policy of the state. In the case cited the gift was to vest in a son of the testator, one Willard B. Moon, upon the death of his wife or upon his divorce from her or upon his permanent separation from her. The court was asked to hold that the condition upon which the legacy was to vest was void as against public policy with the result of making the gift absolute so as to vest in the donee without performance of the condition. The court declared that this would be directly contrary to the express intent of the testator, who did not intend that the gift should vest in Willard unless he became separated from his wife by her death or a divorce, or in some other way. "Where it is possible that the condition may be legally performed it will not be presumed that the testator intended an illegal performance. The present gift was upon alternative conditions, one of which was the death of Willard's wife. It will not be presumed that the testator in the absence of express language so directing, intended that his son should procure his wife's death." Applying this language to the case at bar, it is not to be assumed for a moment that it was the intention of Mr. Seaman to incite his daughter to bring about the death of Mr. Fassler. It might just as well be presumed in every case of a devise for life to one person with a remainder over to another, that the remainderman would be thereby induced to compass the death of the life tenant. This would wholly disregard the legal presumption that men do not commit criminal offenses. (*Bradish* v. *Bliss*, 35 Vt. 326.)

The position of the appellant in the present proceeding is simply this. She asks us to invalidate a portion of her father's will because its tendency is to incite her to take the life of the gentleman whom she has selected to represent her interests in this court as her counsel. Such a contention would hardly merit serious consideration

were it not for the fact that it has been so urgently and earnestly argued before us. It is quite natural that the gentleman who was the object of the testamentary prohibition in this case should feel sensitive at the slight put upon him by the testator; but that fact does not justify him in distorting the provisions of the will into an invitation to murder.

The order appealed from should be affirmed, with costs.

Hiscock, Collin, Cuddeback, Hogan and Pound, JJ., concur; Seabury, J., not voting.

Order affirmed.