CLARA N. PACHOLDER, Widow,

*vs.*

BENJAMIN ROSENHEIM, Executor Under the Last
Will and Testament of Mitchell S. Pacholder,
Deceased.

————

THE SAFE DEPOSIT & TRUST COMPANY OF
BALTIMORE, Trustee,

*vs.*

BENJAMIN ROSENHEIM, Executor Under the Last
Will and Testament of Mitchell S. Pacholder,
Deceased.

*Wills*: *revocation; mere alteration, ineffective. Widows' rights*:
*renunciation; not necessary when will makes no provision
for——. Equitable election. Marriage*: *conditions in
partial restraint of——; consent of parents;
within certain faith.*

The mere alteration of a will without republication or re-
execution, according to the requirements of the Code, section 324
of Article 93, is of no legal effect.                    p. 457

Where the will of a testator makes no provision for his
widow, no renunciation by her is necessary as a condition prece-
dent for her to sustain her claim for common law or statutory
rights.                                            p. 458

Such claim of a widow on the estate of her husband is in opposition to the will, and not under it; while she is entitled to the same provision as though her husband had died intestate, she can not claim any additional benefit, which could only arise by virtue of the provisions of the will, such as a claim under the plea of an equitable conversion.        ' pp. 458-459

A legacy left to be paid at the time of the marriage of the legatee, provided her marriage be with the consent of both of her parents or the survivor of them, constitutes a condition precedent; and if the legatee elopes and marries without her parents' consent the condition is not complied with, nor is it satisfied by the subsequent assent of her parents to the marriage.                    p. 459

A testator in such a case can not be presumed to have waived the condition from the mere fact that he survived two years after such marriage without having changed or altered his will in respect thereto.                    p. 460

A condition in a will that the legatee shall be paid the legacy at the time of her marriage, provided the marriage be within a certain faith (that of the testator and legatee), and be with the consent of her parents, or the survivor of them, is not a provision void as being in restraint of marriage.        p. 463

*Decided December 13th, 1916.*

Cross-Appeals from the Circuit Court of Baltimore City. (DAWKINS, J.)

The facts are stated in the opinion of the Court.

The causes were argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER and STOCKBRIDGE, JJ.

*Meyer Rosenbush,* for Clara N. Pacholder, appellant.

*Joseph N. Ulman* (with whom were *Charles H. Knapp* and *Clarence H. Tucker* on the brief), for the Safe Deposit & Trust Company of Baltimore, Trustee.

*Ralph Robinson,* for Edith Senker, appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

On the first day of June, 1896, Mitchell S. Pacholder executed a will which he had directed prepared by his attorney. Mr. Pacholder was at the time a widower. Subsequently on the 22nd March, 1899, he married Clara N. Pacholder, the appellant in No. 29, and lived until the month of October, 1914, but except as hereinafter noted made no change, and attempted to make none, in the provisions of his will executed in 1896.

The will executed by Mr. Pacholder in 1896 was in typewriting, and the will as found after his death in 1914 was the same paper, but contained quite a number of alterations and interlineations in the handwriting of Mr. Pacholder, identified as such and so conceded by the trustee in these appeals. There was no republication or re-execution of the will, and it is conceded that under the settled law in this State these attempted alterations of the will were without legal effect; Code P. G. L., Art. 93, sec. 324, prescribing in what manner revocations of a testamentary paper must be made in order to be effectual. This section has been repeatedly construed and applied by this Court. *Eschbach* v. *Collins,* 61 Md. 478; *Home of the Aged* v. *Bantz,* 107 Md. 543; *Safe Dep. & Tr. Co.* v. *Thom,* 117 Md. 154.

Mr. Pacholder left no children by either of his wives, nor is there any mention of his wife contained in his will, a perfectly natural condition when it is borne in mind that he was a widower at the time of executing his will, and remained such for three years thereafter.

He left both real and personal property, and in his will was contained the following provision:

> "I do hereby nominate, constitute and appoint Benjamin Rosenheim executor of this my last will and testament with full power and authority to sell and dispose of all or any part of my estate * * * and to convert the same as speedily as possible into cash, and to pay over the same to the said Safe Deposit and Trust

Company of Baltimore City, Trustee hereinbefore named."

The first question which is presented to this Court is as to the quantum of interest to which Mrs. Clara N. Pacholder, widow of Mitchell S. Pacholder, is entitled.

As the will made no provision for his widow there was nothing in it for her to renounce; *Matthews* v. *Targarona,* 104 Md. 442; and there is nothing in the record to show that she has waived or barred any rights which she might have.

The right of a widow to share in her husband's personalty was established in this State in 1798, in the case of *Griffith* v. *Griffith,* 4 H. & McH. 101, and has been consistently enforced since that time. There being no children or descendants of Mr. Pacholder, and both of his parents being dead at the time of his death, his widow, Clara N. Pacholder, was entitled to one-half of the personal property.

She now claims to be entitled to one-half of the proceeds of the real estate left by Mr. Pacholder, and which was sold by his executor in conformity with the power and direction before set forth. The trustee insists that her rights in this property are not the one-half, but such interest as she would have been entitled to in the real estate of her husband under the rules of the equity courts. The argument on behalf of Mrs. Pacholder is that an equitable conversion took place with regard to the real estate, transforming it from real to personal property, and that where the conversion is authorized by the will it is regarded in law as so converted at the time of the death of the testator. The rule as thus stated has been repeatedly recognized and applied in this Court. *Cronise* v. *Hardt,* 47 Md. 433; *Sloan* v. *Safe Dep. & Tr. Co.,* 73 Md. 239; *Kennedy* v. *Dickey,* 99 Md. 300; *Stake* v. *Mobley,* 102 Md. 408.

That rule is without application in the present case. Mrs. Pacholder is now claiming, not by virtue of the will, but in opposition to its provisions, and she is entitled, therefore, to

the same interest and no other than if Mr. Mitchell S. Pac-
holder had died intestate. She cannot claim a benefit by rea-
son of being entirely omitted from the provisions of the will,
and an additional benefit which can arise only by virtue of its
provisions. If Mitchell S. Pacholder had in fact died in-
testate there would have been no conversion whatever of his
real property, and the interest of Mrs. Pacholder must be
determined upon that basis. The conversion from real to
personal property which took place, resulted only because of
the express provision of the will, and no error was committed
by the judge of the Circuit Court of Baltimore City in this
portion of the decree.

The appeal in No. 30 arises under an entirely different
clause of Mr. Pacholder's will, and presents a question of
much greater difficulty. The clause reads as follows:

"I give, devise and bequeath unto my niece Edith,
the daughter of my brother, Abram M. Pacholder, the
sum of $5,000.00 to be paid to her at the time of her
marriage, provided, however, that the said marriage
is had with the consent of both of her parents if alive
or of the consent of the parent surviving, and provided
further, that she does not marry outside of the Jew-
ish faith."

The testimony shows that Edith, now Mrs. Senker, com-
plied with the provision as to marrying in the Jewish faith;
but it further shows that she eloped and was married on the
24th January, 1912, some two years and a half before the
death of her uncle, the testator. Her marriage, therefore,
was not with the consent previously had of her parents, both
of whom were living, though they appear to have given their
assent after the fact, and this Court is asked to say that the
subsequent assent of the parents is such a substantial equiva-
lent for the antecedent consent, as to constitute a compliance
with the conditions of the will.

The condition it is conceded was a condition precedent, not
subsequent. It is of course evident that the condition might

have been waived by the testator himself, if it could be shown, for example, that he had given his consent to the marriage before it took place; but there is no suggestion in the testimony of any such waiver in point of fact, nor can one be implied because of the lapse of two and a half years between the time of Edith's elopment and the death of the testator. It is true that he might at any time during that interval have changed his will, and revoked or modified the condition, but it is equally true that at any time during the fifteen years preceding his death he might have made provision in his will for his wife, and yet he did not. There is, therefore, no fact shown from which any legitimate inference of a waiver upon his part can be deduced.

The question upon this appeal is really two-fold in character: the effect of the breach of a condition precedent as affecting a legacy given upon such a condition; and, second, the proper contruction to be placed upon a provision in partial restraint of marriage.

The general rule is that laid down in 40 *Cyc.* 1719, as follows: "A condition as to marriage of the beneficiary must be at least substantially performed unless it is waived as by a consent of the testator to a marriage in his lifetime, and on the other hand, a substantial performance in accordance with the intention of the testator is sufficient. As a rule where the consent of several persons to a marriage of a beneficiary is required that of less than all who are living is not sufficient. Subsequent approbation of a marriage by the executor, where the marriage had been without the consent, is not a performance of the condition."

For the statements thus made the editor of *Cyc.* cites two American cases: *Collier, Executor,* v. *Slaughter's Administrator,* 20 Ala. 266, decided in 1852, and *Hogan* v. *Curtin,* 88 N. Y. 162; 42 Am. Rep. 244, decided in 1882.

In the first of these cases William E. Collier gave certain property to be held, and the income used for the support and education of the testator's daughter Amy, and three step-

children. Of the three step-children, Ellen was the oldest and older than the testator's own daughter, and the will provided that Ellen may "marry with the approbation of her guardian." There was a bequest over in the contingency of the death of any of the children or of Ellen's marriage. Subsequent to the testator's death Ellen married, but no guardian had been appointed for her. Before her marriage she applied for the consent of the acting executor of her step-father, which he refused; she then applied to her grandfather, with whom she was living, for his consent, and he refused, until she informed him that if he did not assent, she would elope; he then consented and she was married. One of her brothers dying subsequently, the question arose as to the status of this legacy, and it was held that the condition was operative and valid, that it was not a condition in restraint of marriage generally, but a proper restraint against an improvident marriage.

In *Hogan* v. *Curlin, supra,* the testator provided that his daughter should receive $16,000—upon attaining her majority or marriage, with the consent of her mother' and the executors; and in case of marrying without such consent she was to have but $5,000. In this case there was no gift over, and the daughter married when eighteen years old, with the consent of the then sole executor, but without that of her mother, and it was held that there had been a breach of the condition; that the condition was a valid one, and that the legacy was forfeited, save as to the sum of $5,000.

The substantial facts of these cases have been stated briefly, to show that the text of *"Cyc.,"* to the effect that a substantial compliance is sufficient, is hardly borne out by the American cases. Both of these cases rely upon and cite at considerable length English decisions, rendered by such eminent Chancellors as LORD LOUGHBOROUGH, LORD HARDWICK, LORD ELDON and LORD THURLOW. When reference is had to the English decisions, there has been a disposition to refine distinctions to an almost shadowy point, in order to meet the Chancellor's

views of the substantial justice of the particular case, rather than establish a clear-cut rule for the guidance of other courts.

It is of course familiar law that a condition in general restraint of marriage is void, as against public policy, while a condition partial only in operation and reasonable in its nature, has been almost invariably upheld.

In some cases the English decisions have drawn a distinction as between a valid and void condition, dependent upon whether there was a devise or bequest over, upon a violation of the condition. These cases have proceeded upon the theory, that where there was such bequest or devise over, there was substantial interest of other parties which attached immediately upon and as the result of any breach of the condition; while if there were no such bequests, devises or limitations over, the condition was to be regarded as one *in terrorem,* and as such, void and inoperative.

Other distinctions have been drawn dependent upon the character of the property which was the subject matter of the legacy or devise, holding one rule where the legacy was made a charge upon land, and a different rule where it affected only personalty.

The various distinctions and refinements have found their most severe critics among some of the English judges themselves, and a condition in restraint of marriage, consisting in requiring the assent thereto of the parents of a beneficiary is so manifestly intended as a safe-guard against ill-advised and improvident marriages, that courts should not be astute to break it down.

The conditions imposed by the testator in the present case were two: first, that the marriage of the legatee should be with the approbation of her parents or parent, if only one was living; and, second, that she should marry within the membership of a particular faith.

It is evident from the record that at the time when Mr. Pacholder's will was drawn, Edith must have been quite a

young child, probably less than ten years of age.  It was impossible then to form any estimate what her future development might be, and under these circumstances the conditions contained in the will can not be characterized by the Court as arbitrary or unreasonable.  They were conditions only in partial restraint of marriage, and framed along lines manifestly intended for the best good of his niece, and as such ought to be given full effect by the Court.

In accordance with the views expressed so much of the decree of the Circuit Court of Baltimore City as relates to the legacy of $5,000 to Edith Pacholder, niece of Matthew S. Pacholder, must be reversed, and the cause remanded, to the end that a decree may be entered by that Court in accordance with this opinion.

> *Decree of the Circuit Court of Baltimore City affirmed in part and reversed in part, and cause remanded; the costs in appeal No. 29 to be paid by the appellant, Clara N. Pacholder; the costs in No. 30 to be paid out of the estate of Matthew S. Pacholder by the Safe Deposit and Trust Company of Baltimore, trustee.*