In the Matter of the Will of ISAAC LIBERMAN, Deceased.

HERMAN N. LIBERMAN et al., Individually and as Trustees under the Will of ISAAC LIBERMAN, Deceased, et al., Appellants; HARRY LIBERMAN, Respondent.

Argued November 28, 1938; decided January 10, 1939.

460

*Henry Hofheimer, Louis J. Paley, Milton Mansbach* and *David B. Baum* for appellants. The provisions of the trusts under subdivisions " d " and " e " of paragraph " Eleventh " of the will referring to a marriage of respondent with the consent of the trustees are valid. (Alexander, Commentaries on Wills, p. 1537; Schouler on Law of Wills [6th ed.], § 1352; Thompson on Law of Wills [2d ed.], p. 468; Jarman on Wills [7th ed.], p. 1496; *Hogan* v. *Curtin,* 88 N. Y. 162; *Whiting* v. *DeRutzen,* L. R. [1905] 1 Ch. Div. 96; *Pacholder* v. *Rosenheim,* 129 Md. 455; *Matter of Smith* v. *Smith,* 44 Ch. Div. 654; *Matter of Cowen,* 148 Misc. Rep. 35; *Matter of Kempf,* 252 App. Div. 28; *Magee* v. *O' Neill,* 19 S. C. 170; *Barnum* v. *Baltimore,* 62 Md. 275; *Hodgson* v. *Halford,* 11 Ch. Div. 959.) Respondent's brother and sister are entitled to the income of the trust under subdivision " e " of paragraph " Eleventh " regardless of the validity of the

provision referring to the consent of the trustees to respondent's marriage. (*Williams* v. *Jones*, 166 N. Y. 522; *Manice* v. *Manice*, 43 N. Y. 303; *Leonard* v. *Burr*, 18 N. Y. 96.)

*Ambrose V. McCall* and *John R. O'Hanlon* for respondent. The decree of the Surrogate construing the testator's intent is amply supported by the evidence and is in all respects in accordance with law. (*Matter of Haight*, 51 App. Div. 310; *Matter of Hughes*, 225 App. Div. 29; *Matter of Carples*, 140 Misc. Rep. 459; *Matter of Forte*, 149 Misc. Rep. 327; *Merriam* v. *Wolcott*, 61 How. Pr. 377; *Saul* v. *Swartz*, 112 App. Div. 511; *Van Vechten* v. *Van Vechten*, 8 Paige, 103; *Matter of Schwarz*, 160 Misc. Rep. 151.)

LEHMAN, J. The testator, Isaac Liberman, provided in his will that after the death of his wife his residuary estate should be divided into six parts or shares. He had two sons and a daughter. To each he bequeathed beneficial interests in two shares. To his son Herman N. Liberman he gave the two shares absolutely. To his daughter Etta L. Baum he gave one share absolutely and a life interest in a second share with remainder to her issue. The testator named his son Herman and his daughter as his executors and trustees. They were both married and had children. The testator's son Harry Liberman had no children. He had married twice. The testator was an orthodox Jew. Harry Liberman had married women of a different faith and the testator had strongly disapproved. Though he bequeathed to Harry Liberman and his issue beneficial interests in the remaining two shares of his residuary estate, he provided that the enjoyment of such beneficial interest — with the exception of a life interest in one share — should be contingent upon the marriage of Harry Liberman with the consent and approval of the executors and trustees named in the will.

The will provides that:

" (d) I give, devise and bequeath one of such shares to my Trustees hereinafter named, in trust nevertheless, to collect the rents, issues and profits thereof and to pay the same to my beloved son Harry Liberman, during his lifetime. Upon his death, should he have during his lifetime married with the consent and approval of my beloved wife and the executors and trustees herein named and/or the survivors or successors of them, and should he be survived by any issue of such marriage, then I give, devise and bequeath the principal of such trust fund to the issue of such marriage; in the event that there shall be no such issue, or should he have married without such consent then I give, devise and bequeath the principal of such trust fund to his brother and sister, him surviving and the issue of any deceased brother and sister, the issue of a deceased brother or sister to take collectively the share their parent would have taken.

" (e) I give, devise and bequeath one of such shares to my trustees hereinafter named, in trust nevertheless, to collect the rents, issues and profits thereof, and to pay the same to my beloved daughter Etta L. Baum and Herman N. Liberman, in equal shares during the lifetime of my son Harry Liberman and/or until the marriage of my said son Harry Liberman as hereafter provided.

" Upon the marriage of my son Harry Liberman if such marriage is with the consent and approval of my beloved wife and the trustees hereinafter named and/or survivors and successors of them, upon such event such income is to be paid to my beloved son Harry Liberman during the term of his natural life, otherwise such income shall continue to be paid to Etta L. Baum and Herman N. Liberman. Should Harry Liberman be survived by an issue of such marriage, contracted as aforestated, then and in that event, I give, devise and bequeath the principal of such trust fund to the issue of such marriage; in the event there shall be no such issue or should he have

married without such consent then I give, devise and bequeath the principal of such trust fund to his brother and sister him surviving, and the issue of any deceased brother and sister, the issue of a deceased brother and sister to take collectively the share their parent would have taken.

" In the event of the death of my beloved daughter Etta L. Baum or my son Herman N. Liberman, during the continuance of this trust then and in that event, I give, devise and bequeath the income of this trust fund to which they may be entitled to receive if living to their issue collectively them surviving."

Harry Liberman has asked his brother and sister to consent to his marriage to Margaret Jones. They have refused. Then Harry Liberman brought this proceeding to compel them, or other persons to be appointed in their place as executors and trustees, to give such consent. The courts below have held that the provisions of the will of Isaac Liberman which we have set forth, " insofar as they require the petitioner, Harry Liberman, to obtain the consent of the testator's wife and the trustees thereinafter named, and /or the survivors or successors of them, to a marriage of Harry Liberman, be and the same hereby are declared to be ineffectual and inoperative and in all other respects in full force and effect."

A testator of sound mind may, subject to statutory restrictions, not material here, choose the objects of his bounty. He may exclude a child or other descendant from any participation in his estate for sound reason, or because of whim or prejudice which might seem unreasonable to others. He may prefer a prodigal son or even an unrepentant sinner to a son who has been an exemplar and pattern of virtue. No considerations of public policy affect the validity even of a bequest which others might deem a reward for evil conduct in the past. The courts do, nevertheless, at times deny validity to a condition annexed to a testamentary gift where the

condition is calculated to influence the *future* conduct of the beneficiary in manner contrary to the established policy of the State. In this case the courts below have found that the condition attached to full enjoyment of the bequest to Harry Liberman, that he shall marry only with the consent of his brother and sister, is against such public policy.

A condition calculated to induce a beneficiary to marry, even to marry in a manner desired by the testator, is not against public policy. A condition calculated to induce a beneficiary to live in celibacy or adultery is against public policy. " Conditions in general restraint of marriage were regarded at common law as contrary to public policy, and, therefore, void." The rule still prevails in New York. (*Matter of Seaman*, 218 N. Y. 77, 81.) Conditions in partial restraint of marriage, which merely impose reasonable restrictions upon marriage, are not against public policy. Thus a condition annexed to a bequest designed to prevent the marriage of the testator's daughter with a particular individual is valid and enforcible. " Such prohibitions have not only received the sanction of judicial authority but we think may be justified by sound reasoning." (*Matter of Seaman, supra.*) The court there cited with approval Jarman on Wills: " Conditions not to marry a Papist, or a Scotchman; not to marry any but a Jew  *  *  *  have also been held good." Indeed, such conditions seem to have been sustained whenever challenged. (*Pacholder* v. *Rosenheim*, 129 Md. 455; *Hodgson* v. *Halford*, [1879] L. R. 11 Ch. Div. 959; Jarman on Law of Wills [7th ed.], p. 1497.) In this case the evidence leaves no room for doubt that the conditions annexed to the gift to Harry Liberman and his issue were intended by the testator to restrain his son Harry from marrying any but a Jewess. On that ground the appellants urge that the condition is valid.

Even though extrinsic evidence establishes that the *purpose* of the condition, imposed by the testator, was to

restrain his son from marrying any but a Jewess, yet the condition as written in the will goes further. Only marriage with the consent of executors and trustees, who under the will of the testator would profit by refusal of consent, constitutes compliance with the terms of the will and there is nothing *in the language of the will* which could be construed as a limitation upon their power to give or withhold their consent in the exercise of an unfettered discretion. The question we must decide is whether such a condition is valid. The question would, of course, be different, if the condition of the will had been different.

In the case of *Hogan* v. *Curtin* (88 N. Y. 162, 170) this court approved a condition imposed by the testator that the beneficiary, his daughter, should not marry *during her minority*, without the consent of her mother and the executors named in the will. In an opinion by ANDREWS, Ch. J., the court there said: " A condition prohibiting marriage before twenty-one without consent, is by the common law valid and lawful. It is otherwise of conditions in general restraint of marriage, they being regarded as contrary to public policy, and the ' common weal and good order of society.' But reasonable conditions designed to prevent hasty or imprudent marriages, and to subject a child, or other object of the testator's bounty, to the just restraint of parents or friends during infancy, or other reasonable period, are upheld by the common law, not only because they are proper in themselves, but because by upholding them the law protects the owner of property in disposing of it under such lawful limitations and conditions as he may prescribe." In the will of Mr. Liberman the restraint was not " during infancy or other reasonable period," it was to continue as long as Harry Liberman should live. Moreover, as we have said, the executors and trustees whose consent is required for compliance with the condition imposed by

the testator are also legatees who under the terms of the will would suffer a detriment by giving their consent.

Authority of weight may be found to support the validity of a condition requiring consent of a specified person or persons without limitation of age. (Thompson on Law of Wills [2d ed.], § 381, p. 469; Schouler on Law of Wills [6th ed.], § 1351; *Whiting* v. *De Rutzen*, L. R. [1905] 1 Ch. Div. 96; *Pacholder* v. *Rosenheim, supra.*) The question has never been decided in this court. Again, there is authority to support the validity of a condition requiring consent of a trustee or other person who might benefit by refusal to give consent (2 Alexander, "Commentaries on Law of Wills," § 1070); and again this court has never directly passed upon the question.

Whether a condition in restraint of marriage is reasonable depends, not upon the form of the condition, but upon its purpose and effect under the circumstances of the particular case. What has been said and decided in other cases may often guide decision in analogous cases; but no rigid rule based upon ancient precedents dictates a decision where the circumstances are different and reason points to another conclusion. In spite of what was said in *Hogan* v. *Curtin* (*supra*) the fact that the legatee is a man of mature age and that the condition that he must obtain consent to any marriage is without limitation of time might not alone and under all circumstances render the condition unreasonable. The fact that if the executors and trustees refuse consent, they or their issue would enjoy the benefits which would otherwise go to Harry Liberman and his issue, might not alone and under all circumstances render the condition unreasonable. We decide in this case only whether the condition in the present case is reasonable and does not contravene our public policy, and we may not ignore any of those factors which determine either the purpose or the extent of the restraint. The fact that the restraint is imposed upon an adult and is

to continue during life and is not limited to " reasonable time " is such a factor, and so is also the fact that the executors and trustees would have power to keep the property for themselves or their descendants by withholding their consent. Indeed, so distinguished an equity judge as Chancellor WALWORTH has indicated that in his opinion, because of that factor alone, the condition " would probably be invalid and inconsistent with the principles of public policy; as it might operate as an inducement to her [them] to withhold her [their] consent to a proper marriage." (*Bayeaux* v. *Bayeaux*, 8 Paige Ch. 333, 336.) When the condition is considered in its complete setting it becomes evident that the intention of the testator, *as expressed in his will*, is not merely to prevent the beneficiary from marrying any person other than a Jewess or even from entering into an ill-advised marriage, but to prevent *any marriage* not approved by the very persons who by approval would lose the benefit of a legacy which they might otherwise keep. Both reason and authority dictate the conclusion that such a condition is invalid. Its natural tendency might be to induce the beneficiary to live in either celibacy or adultery.

We reach that conclusion, though in this case it appears that the executors and trustees have given most convincing proof that they withhold consent to their brother's marriage only out of respect for their father's wishes and do not wish to profit at their brother's expense. They have even entered into an agreement to pay to their brother, while he remains unmarried, the income which under the terms of the will they might retain until he marries with their consent. None the less, the natural tendency of the condition contained in the will is to restrain all marriage and for that reason it is void.

The question remains, what is the effect of the invalidity of the condition. The testator has annexed the invalid condition to the gift. It is a condition precedent to the vesting of any estate in the beneficiary. Indeed, in

paragraph " e " the testator has provided that the estate shall vest in his other children, subject to be divested only upon compliance with the condition. At common law, invalidity or impossibility of performance of the condition would not result in divesting the preceding vested estate. (2 Jarman on The Law of Wills [7th ed.], p. 1339; *Manice* v. *Manice*, 43 N. Y. 303, 383; *Leonard* v. *Burr*, 18 N. Y. 96, 104.) Courts of equity have, however, given a different effect to conditions in restraint of marriage or other conditions in wills which are void because they have a tendency to induce the beneficiary to adopt a course of conduct contrary to the " common weal and good order of society." The Appellate Division (Second Department) in an earlier case has said: " ' With respect to legacies out of personal estate, the civil law, which in this respect has been adopted by courts of equity, differs in some respects from the common law in its treatment of conditions precedent; the rule of the civil law being that where a condition precedent is originally impossible * * * or is illegal as involving *malum prohibitum,* the bequest is absolute, just as if the condition had been subsequent.' (2 Jar. Wills [6th Am. ed.], 15. See, also, 2 Williams Exrs. [7th Am. ed.] 1264.) ' When, however, the illegality of the condition does not concern anything *malum in se,* but is merely against a rule or the policy of law, the condition only is void. * * * (1 Roper, Leg. 757.) ' " (*Matter of Haight,* 51 App. Div. 310, 316; *Potter* v. *McAlpine,* 3 Dem. 108, 124.) Though the rule there stated has not been authoritatively approved by this State, it is in accord with the weight of authority. (*O'Brien* v. *Barkley,* 78 Hun, 609; *Matter of Hutchins,* 147 Misc. Rep. 462; *Drace* v. *Klinedinst,* 275 Penn. St. 266; *Brizendine* v. *American Trust & Sav. Bank,* 211 Ala. 694.) The tendency of the courts has been to ignore distinctions between " legacies out of personal estate " and legacies or devises of interests in real property, and to apply the rule of the civil law to conditions prece-

dent and even to conditions creating a limitation upon a precedent estate with respect to all legacies or devises. The beneficiary takes under the will as if no conditions had been annexed to the gift to him or as if he had complied with the void condition. (Cf. 2 Jarman on The Law of Wills [7th ed.], p. 1496.)

The rule in that broad form may not be in accord with common-law principles. We recognize that it is rooted in considerations of practical expediency or necessity rather than logic. To give the rule less force; to declare the condition void without at the same time giving effect to the gift made upon the void condition, would be a mockery of the beneficiary and by indirection would permit a testator to accomplish a result which we hold contrary to the " common weal." Since the condition is void we need not decide whether if valid it would apply to a marriage contracted before the death of the testator.

The order should be affirmed, without costs.

CRANE, Ch. J., O'BRIEN, LOUGHRAN, FINCH and RIPPEY, JJ., concur; HUBBS, J., taking no part.

Order affirmed.