SHAPIRA *v.* UNION NATIONAL BANK ET AL.

(No. 85426-C—Decided January 22, 1974.)

Common Pleas Court of Mahoning County, Probate Division.

*Mr. Dennis Haines,* for plaintiff.
*Mr. Martin Novak,* for defendant State of Israel.
*Mr. Irwin I. Kretzer,* for defendant Union National Bank.

HENDERSON, J. This is an action for a declaratory judgment and the construction of the will of David Shapira, M. D., who died April 13, 1973, a resident of this county. By agreement of the parties, the case has been submitted upon the pleadings and the exhibit.

The portions of the will in controversy are as follows:

"*Item VIII.* All the rest, residue and remainder of my estate, real and personal, of every kind and description and wheresoever situated, which I may own or have the right to dispose of at the time of my decease, I give, devise and bequeath to my three (3) beloved children, to wit: Ruth Shapira Aharoni, of Tel Aviv, Israel, or wherever she may reside at the time of my death; to my son Daniel Jacob

Shapira, and to my son Mark Benjamin Simon Shapira in equal shares, with the following qualifications: * * *

"(b) My son Daniel Jacob Shapira should receive his share of the bequest only, if he is married at the time of my death to a Jewish girl whose both parents were Jewish. In the event that at the time of my death he is not married to a Jewish girl whose both parents were Jewish, then his share of this bequest should be kept by my executor for a period of not longer than seven (7) years and if my said son Daniel Jacob gets married within the seven year period to a Jewish girl whose both parents were Jewish, my executor is hereby instructed to turn over his share of my bequest to him. In the event, however, that my said son Daniel Jacob is unmarried within the seven (7) years after my death to a Jewish girl whose both parents were Jewish, or if he is married to a non Jewish girl, then his share of my estate, as provided in item 8 above should go to The State of Israel, absolutely."

The provision for the testator's other son Mark, is conditioned substantially similarly. Daniel Jacob Shapira, the plaintiff, alleges that the condition upon his inheritance is unconstitutional, contrary to public policy and unenforceable because of its unreasonableness, and that he should be given his bequest free of the restriction. Daniel is 21 years of age, unmarried and a student at Youngstown State University.

The provision in controversy is an executory devise or legacy, under which vesting of the estate of Daniel Jacob Shapira or the State of Israel is not intended to take place necessarily at the death of the testator, but rather conditionally, at a time not later than seven years after the testator's death. The executory aspect of the provision, though rather unusual, does not render it invalid. *Heath* v. *City of Cleveland* (1926), 114 Ohio St. 535.

## CONSTITUTIONALITY

Plaintiff's argument that the condition in question violates constitutional safeguards is based upon the premise that the right to marry is protected by the Fourteenth Amendment to the Constitution of the United States. *Meyer* v. *Nebraska* (1923), 262 U. S. 390; *Skinner* v. *Oklahoma* (1942), 316 U. S. 535; *Loving* v. *Virginia* (1967), 388 U. S. 1.

In *Meyer* v. *Nebraska,* holding unconstitutional a state statute prohibiting the teaching of languages other than English, the court stated that the Fourteenth Amendment denotes the right to marry among other basic rights. In *Skinner* v. *Oklahoma,* holding unconstitutional a state statute providing for the sterilization of certain habitual criminals, the court stated that marriage and procreation are fundamental to the very existence and survival of the race. In *Loving* v. *Virginia,* the court held unconstitutional as violative of the Equal Protection and Due Process Clauses of the Fourteenth Amendment an antimiscegenation statute under which a black person and a white person were convicted for marrying. In its opinion the United States Supreme Court made the following statements at page 12:

"There can be no doubt that restricting the freedom to marry solely because of racial classifications violates the central meaning of the Equal Protection Clause.

"* * * The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men.

"Marriage is one of the 'basic civil rights of man,' fundamental to our very existence and survival. * * * The Fourteenth Amendment requires that the freedom of choice to marry not be restricted by invidious racial discriminations. Under our Constitution, the freedom to marry, or not marry, a person of another race resides with the inindividual and cannot be infringed by the State."

From the foregoing, it appears clear, as plaintiff contends, that the right to marry is constitutionally protected from restrictive state legislative action. Plaintiff submits, then, that under the doctrine of *Shelley* v. *Kraemer* (1948), 334 U. S. 1, the constitutional protection of the Fourteenth Amendment is extended from direct state legislative action to the enforcement by state judicial proceedings of private provisions restricting the right to marry. Plaintiff contends that a judgment of this court upholding the condition restricting marriage would, under *Shelley* v. *Kraemer,* constitute state action prohibited by the Fourteenth Amendment as much as a state statute.

In *Shelley* v. *Kraemer* the United States Supreme Court

held that the action of the states to which the Fourteenth Amendment has reference includes action of state courts and state judicial officials. Prior to this decision the court had invalidated city ordinances which denied blacks the right to live in white neighborhoods. In *Shelley* v. *Kraemer* owners of neighboring properties sought to enjoin blacks from occupying properteis which they had bought, but which were subjected to privately executed restrictions against use or occupation by any persons except those of the Caucasian race. Chief Justice Vinson noted, in the course of his opinion at page 13: ''These are cases in which the purposes of the agreements were secured only by judicial enforcement by state courts of the restrictive terms of the agreements.''

In the case at bar, this court is not being asked to enforce any restriction upon Daniel Jacob Shapira's constitutional right to marry. Rather, this court is being asked to enforce the testator's restriction upon his son's inheritance. If the facts and circumstances of this case were such that the aid of this court were sought to enjoin Daniel's marrying a non-Jewish girl, then the doctrine of *Shelley* v. *Kraemer* would be applicable, but not, it is believed, upon the facts as they are.

Counsel for plaintiff asserts, however, that his position with respect to the applicability of *Shelley* v. *Kraemer* to this case is fortified by two later decisions of the United States Supreme Court: *Evans* v. *Newton* (1966), 382 U. S. 296 and *Pennsylvania* v. *Board of Directors of City Trusts of the City of Philadelphia* (1957), 353 U. S. 230.

*Evans* v. *Newton* involved land willed in trust to the mayor and city council of Macon, Georgia, as a park for white people only, and to be controlled by a white board of managers. To avoid the city's having to enforce racial segregation in the park, the city officials resigned as trustees and private individuals were installed. The court held that such successor trustees, even though private individuals, became agencies or instrumentalities of the state and subject to the Fourteenth Amendment by reason of their exercising powers or carrying on functions governmental in nature. The following comment of Justice Douglas seems revealing: ''If a testator wanted to leave a school

or center for the use of one race only and in no way implicated the State in the supervision, control, or management of that facility, we assume *arguendo* that no constitutional difficulty would be encountered." 382 U. S. 300.

The case of *Pennsylvania* v. *Board*, as the full title, above, suggests, is a case in which money was left by will to the city of Philadelphia in trust for a college to admit poor white male orphans. The court held that the board which operated the college was an agency of the state of Pennsylvania, and that, therefore, its refusal to admit the plaintiffs because they were negroes was discrimination by the state forbidden by the Fourteenth Amendment.

So, in neither *Evans* v. *Newton* nor *Pennsylvania* v. *Board* was the doctrine of the earlier *Shelley* v. *Kraemer* applied or extended. Both of them involved restrictive actions by state governing agencies, in one case with respect to a park, in the other case with respect to a college. Although both the park and the college were founded upon testamentary gifts, the state action struck down by the court was not the judicial completion of the gifts, but rather the subsequent enforcement of the racial restrictions by the public management.

Basically, the right to receive property by will is a creature of the law, and is not a natural right or one guaranteed or protected by either the Ohio or the United States constitution. *Patton* v. *Patton* (1883), 39 Ohio St. 590; *Hagerty* v. *State* (1897), 55 Ohio St. 613; *State, ex rel. Taylor*, v. *Guilbert* (1904), 70 Ohio St. 229; *Magoun* v. *Illinois Trust and Savings Bank* (1898), 170 U. S. 283; 55 Ohio Jurisprudence 2d 535, Wills, Section 64; 57 American Jurisprudence 138, Wills, Section 153. It is a fundamental rule of law in Ohio that a testator may legally entirely disinherit his children. 56 Ohio Jurisprudence 2d 252, Wills, Section 742; 55 Ohio Jurisprudence 2d 564, Wills, Section 101; *Wilson* v. *Behr* (C. A. Hamilton (1936)), 57 Ohio App. 117, 121, 12 N. E. 2d 300, 5 O. O. 424. This would seem to demonstrate that, from a constitutional standpoint, a testator may restrict a child's inheritance. The court concludes, therefore, that the upholding and enforcement of the provisions of Dr. Shapira's will conditioning the bequests to his sons upon their marrying Jewish girls does not offend the

Constitution of Ohio or of the United States. *U. S. National Bank of Portland* v. *Snodgrass* (1954), 202 Ore. 530, 275 P. 2d 860, 50 A. L. R. 2d 725; *Gordon* v. *Gordon* (Mass. (1955)), 124 N. E. 2d 228; 54 Mich. L. Rev. 297 (1955); cf. 39 Minn. L. Rev. 809 (1955).

## PUBLIC POLICY

The condition that Daniel's share should be "turned over to him if he should marry a Jewish girl whose both parents were Jewish" constitutes a partial restraint upon marriage. If the condition were that the beneficiary not marry anyone, the restraint would be general or total, and, at least in the case of a first marriage, would be held to be contrary to public policy and void. A partial restraint of marriage which imposes only reasonable restrictions is valid, and not contrary to public policy: 5 Bowe-Parker: Page on Wills 460, Section 44.25; 56 Ohio Jurisprudence 2d 243, Wills, Section 729; 52 American Jurisprudence 2d 1023, Marriage, Section 181. The great weight of authority in the United States is that gifts conditioned upon the beneficiary's marrying within a particular religious class or faith are reasonable. 5 Bowe-Parker; Page on Wills 461, Section 44.25; 52 American Jurisprudence 2d 1025, Marriage, Section 183. 56 Ohio Jurisprudence 2d 245, Wills, Section 731; 1 Prentice-Hall, Estate Planning, Law of Wills, 373, Paragraph 375.20; 1 Restatement of the Law, Trusts 2d, 166, Section 62 (h); *National Bank* v. *Snodgrass* (*supra*), annotation, 50 A. L. R. 2d 740; *Gordon* v. *Gordon*, *supra*; *In re Harris* (1955), 143 N. Y. Supp. 2d 746; *Matter of Seaman* (1916), 218 N. Y. 77, 112 N. E. 576; *Matter of Liberman* (1939), 279 N. Y. 458, 18 N. E. 2d 658; *In re Silverstein's Will* (1956), 155 N. Y. Supp. 2d 598; *In re Clayton's Estate* (Phila. Co. Pa. 1930), 13 D. & C. 413; *Pacholder* v. *Rosenheim* (1916), 129 Md. 455, 99 A. 672.

Plaintiff contends, however, that in Ohio a condition such as the one in this case is void as against the public policy of this state. In Ohio, as elsewhere, a testator may not attach a condition to a gift which is in violation of public policy. 56 Ohio Jurisprudence 2d 238, Wills, Section 722; *Neidler* v. *Donaldson* (P. C. Seneca 1966), 9 Ohio Misc. 208, 224 N. E. 2d 404, 38 O. O. 2d 360. There can be no question about the soundness of plaintiff's position that

34

the public policy of Ohio favors freedom of religion and that it is guaranteed by Section 7, Article I of the Ohio Constitution, providing that "all men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience." Plaintiff's position that the free choice of religious practice cannot be circumscribed or controlled by contract is substantiated by *Hackett* v. *Hackett* (C. A. Lucas 1958), 78 Ohio Law Abs. 485, 150 N. E. 2d 431. This case held that a covenant in a separation agreement, incorporated in a divorce decree, that the mother would rear a daughter in the Roman Catholic faith was unenforceable. However, the controversial condition in the case at bar is a partial restraint upon marriage and not a covenant to restrain the freedom of religious practice; and, of course, this court is not being asked to hold the plaintiff in contempt for failing to marry a Jewish girl of Jewish parentage.

Counsel contends that if "Dr. David Shapira, during his life, had tried to impose upon his son those restrictions set out in his Will he would have violated the public policy of Ohio as shown in *Hackett* v. *Hackett*. The public policy is equally violated by the restrictions Dr. Shapira has placed on his son by his Will." This would be true, by analogy, if Dr. Shapira, in his lifetime, had tried to force his son to marry a Jewish girl as the condition of a completed gift. But it is not true that if Dr. Shapira had agreed to make his son an inter-vivos gift if he married a Jewish girl within seven years, that his son could have forced him to make the gift free of the condition.

It is noted, furthermore, in this connection, that the courts of Pennsylvania distinguish between testamentary gifts conditioned upon the religious faith of the beneficiary and those conditioned upon marriage to persons of a particular religious faith. In *In Re Clayton's Estate*, *supra* (13 D. & C. 413), the court upheld a gift of a life estate conditioned upon the beneficiary's not marrying a woman of the Catholic faith. In its opinion the court distinguishes the earlier case of *Drace* v. *Klinedinst* (1922), 275 Pa. 266, 118 A. 907, in which a life estate willed to grandchildren, provided they remained faithful to a particular religion, was held to violate the public policy of

Pennsylvania. In *Clayton's Estate*, the court said that the condition concerning marriage did not affect the faith of the beneficiary, and that the condition, operating only on the choice of a wife, was too remote to be regarded as coercive of religious faith.

But counsel relies upon an Ohio case much more nearly in point, that of *Moses* v. *Zook* (C. A., Wayne 1934), 18 Ohio Law Abs. 373. This case involves a will in which the testatrix gave the income of her residual estate in trust to her niece and nephews for two years and then the remainder to them. Item twelve provides as follows: "If any of my nieces or nephews should marry outside of the Protestant Faith, then they shall not receive any part of my estate devised or bequeathed to them." The will contained no gift over upon violation of the marriage condition. The holding of the trial court was that item twelve was null and void as being against public policy and the seven other items of the will should be administered as specified in detail by the court. There is nothing in the reported opinion to show to what extent, if at all, the question of public policy was in issue or contested in the trial court; only one of the several other unrelated holdings of the trial court (not including the public policy holding) was assigned as error; and although the Court of Appeals adopted the unexcepted-to holdings of the trial court, there is no citation of authorities or discussion concerning the public policy question itself. The case was apparently not appealed to the Supreme Court, and no other cases in Ohio have been cited or found. *Moses* v. *Zook* differs in its facts in not containing a gift over upon breach of the condition, and appears not to have been a sufficiently litigated or reasoned establishment of the public policy of Ohio which this court should be obliged to follow.

The only cases cited by plaintiff's counsel in accord with the holding in *Moses* v. *Zook* are some English cases and one American decision. In England the courts have held that partial restrictions upon marriage to persons not of the Jewish faith, or of Jewish parentage, were not contrary to public policy or invalid. *Hodgson* v. *Halford* (1879 Eng.) L. R. 11 Ch. Div. 959, 50 A. L. R. 2d 742. Other cases in England, however, have invalidated forfei-

tures of similarly conditioned provisions for children upon the basis of uncertainty or indefiniteness. *Re Blaiberg* [1940] Ch. 385, [1940] 1 All. Eng. 632, 50 A. L. R. 2d 746; *Clayton* v. *Ramsden* [1943], A. C. 320 [1943], 1 All. Eng. 16-H. L., 50 A. L. R. 2d 746; *Re Donn* [1944], Ch. 8 [1943], 2 All. Eng. 564, 50 A L. R. 2d 746; *Re Moss' Trusts* [1945], 1 All. Eng. 207, 61 Times L. 147, 50 A. L. R. 2d 747. Since the foregoing decisions, a later English case has upheld a condition precedent that a granddaughter-beneficiary marry a person of Jewish faith and the child of Jewish parents. The court distinguished the cases cited above as not applicable to a condition precedent under which the legatee must qualify for the gift by marrying as specified, and there was found to be no difficulty with indefiniteness where the legatee married unquestionably outside the Jewish faith. *Re Wolffe* [1953], 1 Week L. R. 1211 [1953] 2 All. Eng. 697, 50 A. L. R. 2d 747.

The American case cited by plaintiff is that of *Maddox* v. *Maddox* (1854), 52 Va. (11 Grattan's) 804. The testator in this case willed a remainder to his niece if she remain a member of the Society of Friends. When the niece arrived at a marriageable age there were but five or six unmarried men of the society in the neighborhood in which she lived. She married a non-member and thus lost her own membership. The court held the condition to be an unreasonable restraint upon marriage and void, and that there being no gift over upon breach of the condition, the condition was in terrorem, and did not avoid the bequest. It can be seen that while the court considered the testamentary condition to be a restraint upon marriage, it was primarily one in restraint of religious faith. The court said that with the small number of eligible bachelors in the area the condition would have operated as a virtual prohibition of the niece's marrying, and that she could not be expected to "go abroad" in search of a helpmate or to be subjected to the chance of being sought after by a stranger. The court distinguished the facts of its case from those in England upholding conditions upon marriage by observing that England was "already overstocked with inhabitants" while this country had "an unbounded extent of territory, a large portion of which is yet unsettled, and in which

increase of population is one of the main elements of national prosperity.'' The other ground upon which the Virginia court rested its decision, that the condition was in terrorem because of the absence of a gift over, is clearly not applicable to the case at bar, even if it were in accord with Ohio law, because of the gift over to the State of Israel contained in the Shapira will.

In arguing for the applicability of the *Maddox* v. *Maddox* test of reasonableness to the case at bar, counsel for the plaintiff asserts that the number of eligible Jewish females in this county would be an extremely small minority of the total population especially as compared with the comparatively much greater number in New York, whence have come many of the cases comprising the weight of authority upholding the validity of such clauses. There are no census figures in evidence. While this court could probably take judicial notice of the fact that the Jewish community is a minor, though important segment of our total local population, nevertheless the court is by no means justified in judicial knowledge that there is an insufficient number of eligible young ladies of Jewish parentage in this area from which Daniel would have a reasonable latitude of choice. And of course, Daniel is not at all confined in his choice to residents of this county, which is a very different circumstance in this day of travel by plane and freeway and communication by telephone, from the horse and buggy days of the 1854 *Maddox* v. *Maddox* decision. Consequently, the decision does not appear to be an appropriate yardstick of reasonableness under modern living conditions.

Plaintiff's counsel contends that the Shapira will falls within the principle of *Fineman* v. *Central National Bank* (1961), 87 Ohio Law Abs. 236, 175 N. E. 2d 837, 18 O. O. 2d 33, holding that the public policy of Ohio does not countenance a bequest or devise conditioned on the beneficiary's obtaining a separation or divorce from his wife. Counsel argues that the Shapira condition would encourage the beneficiary to marry a qualified girl just to receive the bequest, and then to divorce her afterward. This possibility seems too remote to be a pertinent application of the policy against bequests conditioned upon divorce. Most other authorities agree with *Fineman* v. *Bank* that as a general

proposition, a testamentary gift effective only on condition that the recipient divorce or separate from his or her spouse is against public policy and invalid. 14 A. L. R. 3d 1222. But no authorities have been found extending the principle to support plaintiff's position. Indeed, in measuring the reasonableness of the condition in queston, both the father and the court should be able to assume that the son's motive would be proper. And surely the son should not gain the advantage of the avoidance of the condition by the possibility of his own impropriety.

Finally, counsel urges that the Shapira condition tends to pressure Daniel, by the reward of money, to marry within seven years without opportunity for mature reflection, and jeopardizes his college education. It seems to the court, on the contrary, that the seven year time limit would be a most reasonable grace period, and one which would give the son ample opportunity for exhaustive reflection and fulfillment of the condition without constraint or oppression. Daniel is no more being "blackmailed into a marriage by immediate financial gain," as suggested by counsel, than would be the beneficiary of a living gift or conveyance upon consideration of a future marriage—an arrangement which has long been sanctioned by the courts of this state. *Thompson* v. *Thompson* (1867), 17 Ohio St. 649.

In the opinion of this court, the provision made by the testator for the benefit of the State of Israel upon breach or failure of the condition is most significant for two reasons. First, it distinguishes this case from the bare forfeitures in *Moses* v. *Zook*, and in *Maddox* v. *Maddox* (including the technical in terrorem objection), and, in a way, from the vagueness and indefiniteness doctrine of some of the English cases. Second, and of greater importance, it demonstrates the depth of the testator's conviction. His purpose was not merely a negative one designed to punish his son for not carrying out his wishes. His unmistakable testamentary plan was that his possessions be used to encourage the preservation of the Jewish faith and blood, hopefully through his sons, but, if not, then through the State of Israel. Whether this judgment was wise is not for this court to determine. But it is the duty of this court to

honor the testator's intention within the limitations of law and of public policy. The prerogative granted to a testator by the laws of this state to dispose of his estate according to his conscience is entitled to as much judicial protection and enforcement as the prerogative of a beneficiary to receive an inheritance.

It is the conclusion of this court that public policy should not, and does not preclude the fulfillment of Dr. Shapira's purpose, and that in accordance with the weight of authority in this country, the conditions contained in his will are reasonable restrictions upon marriage, and valid.