# HENRY S. MITCHELL's Lessee, *vs.* SARAH E. MITCHELL.

A testator devised real and personal estate to his son James, and *his heirs,* in trust, that his daughter should enjoy the property during her single life, and if she married, then in trust for her and her heirs, but if she united herself to any religious sisterhood, then her enjoyment of the *entire property* was to cease, and the trustee was to pay her $200 annually, *so long as she remained attached to such sisterhood,* and invest the surplus rents and profits, for her use, if at *any time* thereafter she should determine to leave such sisterhood, "or for the person or persons entitled to the same, agreeably to the provisions hereinafter mentioned." He then declared it was his will, in the event of the death of his daughter, without having been married, *or* in case she should be united to any religious sisterhood for ten years in immediate succession, that the *property* so devised and bequeathed *in trust* for her, as well the interest accrued as the fund itself, shall *belong to* and *devolve upon* his sons, Francis and Henry, or the survivor of them, their or his heirs and assigns, *subject* to the payment of $200, and *no more,* to his daughter, during her life, "and to, for, and upon no other use, intent or purpose, whatsoever." James died, leaving the daughter his *sole heir at law* of the whole blood, and Francis also died, intestate, and without issue, leaving Henry surviving. The daughter united herself, and remained attached, to a religious sisterhood, for more than ten years in immediate succession. On ejectment, by Henry, against the daughter, for the real estate so devised; HELD.:

That upon these facts, and by the true construction of this will, the *legal title* to the property in dispute was vested in Henry, the plaintiff's lessor, and he is, therefore, entitled to recover in this action.

APPEAL from the Superior Court of Baltimore City.

*Ejectment,* for a house and lot in Baltimore, brought May 7th, 1857, by the appellant against the appellee. Plea, *non cul.*

*Exception:* Both parties claim under the will of Francis J. Mitchell, and the only question arises, under the facts, upon the construction of the following clauses of that will :

4th. By this clause the testator gave and devised to his son, James Davidson Mitchell, the house and lot in controversy, with the furniture therein, and other personal property, consisting of stocks and negroes:—"To hold to him, the said James Davidson Mitchell, his *heirs,* executors and administra-

tors, *forever*, in trust and confidence, nevertheless, and to and for the uses, and to the ends, intents and purposes, and subject to the provisoes and declarations hereinafter expressed and declared, of and concerning the same; that is to say, in trust that my daughter, Sarah Elizabeth Mitchell, be suffered and permitted, for and during the time she shall remain single and unmarried, subject to the restriction hereinafter mentioned, in the event of her joining the sisterhood at Emittsburg, or any other religious sisterhood, to use, occupy and enjoy the property last above described or mentioned, and the entire rents, issues and profits and income of the same, to have, receive, take and apply to her separate use and benefit; and in the event of her marriage, in trust for the proper use and behoof of the said Sarah Elizabeth, her heirs, executors, administrators and assigns, forever, free from any control, whatever, of the said James Davidson Mitchell over the same, and subject only to her use, power and disposition. But whereas my said daughter, Sarah Elizabeth Mitchell, has heretofore expressed a desire and intention to join the Sisterhood of St. Joseph's, at Emittsburg, now it is hereby declared to be my will and desire, in case she should, at any time hereafter, unite herself to that sisterhood, ar any other religious sisterhood, that then her enjoyment of the *entire property* hereby devised in trust for her use, and the rents, issues, profits and income thereof, *shall cease*, or be suspended, and that, in lieu thereof, my said son, James Davidson Mitchell, pay her annually the sum of two hundred dollars, *so long as she shall remain attached, or united, to the religious sisterhood*, of which she may become a member, as aforesaid; and, in the mean time, that the surplus proceeds, rents, issues and profits of the same estate, be, by the said James Davidson Mitchell, invested in some productive fund or stock, for the future use and benefit of the said Sarah Elizabeth Mitchell, if she should, *at any time hereafter determine* to leave the sisterhood to which she may become united, *or for the person or persons entitled to the same, agreeably to the provisions hereinafter mentioned.*"

5th. "And lastly, it is declared to be my will and desire, in the event of *the death* of my said daughter, Sarah E. Mitchell, *without having been married, or* in case she should *be united* to any religious sisterhood, as aforesaid, *for ten years in immediate succession*, that the said *property* so devised and bequeathed *in trust* for her, as aforesaid, and all interest accrued upon the stock or fund aforesaid, as well as the stock or fund itself, *shall belong to*, and *devolve upon*, my aforesaid sons, Francis J. and Henry S. Mitchell, or the survivor of them, their or his heirs, executors, administrators and assigns, forever, *subject*, however, so long as the said Sarah Elizabeth Mitchell shall live, *to the payment* to her of the aforesaid annual sum of two hundred dollars, and no more, *and to, for, or upon, no other use, trust, intent or purpose, whatsoever.*"

The testator died in 1825, and James D. Mitchell died in 1837, without issue, leaving no brother or sister of the whole blood other than the defendant, Sarah E. Mitchell. Francis J. Mitchell died in 1841, without issue and intestate, leaving no brother or sister of the whole blood, other than the lessor of the plaintiff, Henry S. Mitchell. The defendant united herself to a religious sisterhood in Baltimore, under the rule of the Roman Catholic church, in 1837, and has ever since continued united thereto, and became a fully professed member, in full communion therewith, in 1845, and has ever since remained as such. It was proved that the premises were of the annual value of $250, and no more, liable to be reduced by necessary outlays for repairs, taxes and insurance.

A prayer was offered by each party asserting and denying, upon these facts, the right of the plaintiff to recover in this action. The court (LEE, J.) granted the defendant's prayer, and rejected that of the plaintiff, and to this ruling the plaintiff excepted, and the verdict and judgment being against him, appealed.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*Thos. S. Alexander,* for the appellant.

As none of the facts, on which the conflicting titles rested, were disputed, the ruling below must have been based exclusively on the ground, that the *legal estate* in the premises remained in the defendant. The appellant insists, that upon the true construction of the will of the father, the estate limited to James was to determine on the marriage of the daughter, or on her death, without having been married, or in the event of her becoming united to any religious sisterhood for ten years in succession, whichever of these events should first happen. On the happening of the first, the legal estate in the premises was to vest absolutely in the daughter, on the happening of either of the other two events, the property devised was to belong to and devolve on the sons, Francis and Henry; and by the death of the former, without issue, and the religious profession of the daughter, has vested wholly in Henry, the lessor of the plaintiff. It is said the word "or," in the last clause, should be read "and," but this is never done except to effectuate the clear intent of the testator, and so far from doing so here, it would clearly frustrate that intent, for by making both contingencies, the death unmarried, and the religious profession for ten successive years, to happen before the estate should vest in Francis and Henry, we must impute to the testator the intent, that if the daughter should die unmarried *before* she had been so united to a religious sisterhood for ten years, these sons should not take, which was clearly not his intention;— such a construction is also contrary to the other provisions of the will, in regard to his daughter, and cannot be adopted without violating, instead of effectuating, the testator's intention.

*Robt. J. Brent* and *Jno. P. Poe* for the appellee.

The only question presented is, the true construction of this will. The theory of the appellee is, that, upon the death of James, the legal title, which had been expressly devised to him in fee, descended, by virtue of the words of inheritance contained in the clause creating it, upon the daughter, his sister of

the whole blood, as his only heir at law, and that consequently, she having been thus vested with the legal estate, became her own trustee to the extent of her right to receive out of the rents of the trust estate the $200 per annum, notwithstanding the fact of her joining a religious sisterhood. Any surplus from the rents, over this sum, it is her duty to pay over to the appellant, her surviving brother of the half-blood, in obedience to the clause which provides, that in the event of her remaining united for ten years in succession to a religious sisterhood, the said property, so devised in trust, shall belong to and devolve upon Francis and Henry, or the survivor of them. The only effect of the happening of the contingency of membership in a religious sisterhood for ten successive years was, to diminish her beneficial interest in the property devised, and not to change the legal estate therein and to devolve it upon the appellant. Nor is this view in conflict with the subsequent clause, which declares that the property devised in trust "shall belong to and devolve upon" Francis and Henry, "subject to the payment to her of the aforesaid annual sum of $200," because this view alone gives effect to the words of inheritance in the clause creating the trust—the words "subject to payment to her," &c., mean payment to her by the trustee, James, *and his heirs*, who are expressly clothed with the legal title, and do not mean that the legal estate of the trustee, James, and his heirs, should be divested and conferred upon Francis and Henry, and their heirs, thus making them the trustees of their half-sister. The testator intended to hold the diminution of the income *in terrorem* over his daughter, as a means of deterring her from becoming a nun. It would be difficult to construe the language he uses so as to make it appear that his purpose was, on the happening of the contingency which he seemed desirous to avert, to destroy the legal estate vested in James, and *his heirs*, and substitute, as trustees, Henry and Francis and their heirs. This view is corroborated by the last sentence of the last clause, which is wholly inconsistent with the idea that the testator meant the trust to terminate upon the happening of the contin-

gency of ten years successive membership of a religious sisterhood. If she married at *any time*, the legal estate was to vest in her absolutely. She may now leave the sisterhood and marry, and, by the terms of the will, she would be entitled to the whole legal estate; so that, by the construction on the other side, the legal estate would be first vested in James and his heirs, then divested from them and vested in Henry and Francis and their heirs, and, in the event supposed, again divested from them and vested in the daughter. Our construction is the more simple and consonant with the intent: we say, the legal estate continued in James and *his heirs* during the life of the daughter or until she married. *Hill on Trustees*, 231 to 235. 2 *Jarman on Wills*, ch. 34. 12 *East*, 455, *Right vs. Smith.* 3 *East*, 533, *Doe vs. Ironmonger.* 6 *Q. B.*, 860, *Adams vs. Adams.* 3 *Md. Rep.*, 505, *Ware vs. Richardson.* There would be no difficulty in the case if the word *"or,"* in the last clause, is construed *"and;"* and when such a construction is obviously necessary, as here, to effectuate the plain intent of a testator, the court will so construe it. 7 *Gill*, 197, *Janney vs. Sprigg.* 1 *Adol. & Ellis, N. S.*, 430, *Davies vs. Davies.*

GOLDSBOROUGH, J., delivered the opinion of this court.

This appeal is taken from a judgment of the Superior court of Baltimore city, rendered in an action of ejectment, brought by the appellant against the appellee, for the recovery of a lot of ground in the city of Baltimore.

At the trial of the cause, two prayers were presented to the court, one at the instance of the plaintiff, which was rejected, and the other by the defendant, which was granted.

To this ruling of the court, the plaintiff excepted. By an examination of these exceptions, we find that the only question for us to determine, is, had the plaintiff such a *legal title* to the property in dispute that he could maintain his action. This depends upon the true construction of the last will and testament of Francis J. Mitchell, set out in the record.

The appellant insists, that upon the true construction of the

will of the father, the estate limited to James D. Mitchell, was to determine on the marriage of the appellee, or on her death without having been married, or in the event of her becoming united to any religious sisterhood for ten years in succession, whichever of those events should first happen;—on the happening of the first contingency, the legal estate in the premises in question, was to vest absolutely in the appellee; on the happening of either of the other two events contemplated, the property devised, was to belong to and devolve on the sons, Francis and Henry, and by the death of the former without issue, and the religious profession of the appellee, has vested wholly in the lessor of the plaintiff.

The theory of the appellee is, that upon the death of James D. Mitchell in 1837, the legal estate which had been *expressly* devised to him in fee, descended, by virtue of the words of inheritance contained in the clause creating it, upon her as his only heir at law, she being his sister of the whole blood, and that, consequently, she having been thus vested with the legal estate, became her own trustee to the extent of her right to receive out of the rents of the trust estate, the sum of two hundred dollars per annum, notwithstanding the fact of her joining a religious sisterhood.

The view entertained by the appellant is, in our opinion, clearly correct. The testator was a gentleman of large fortune, and the provisions of his will indicate great care in the disposition of his property. In reference to his daughter, he appointed her brother, James D. Mitchell, her trustee to manage her portion while she remained single, and during that period when, if she joined a religous sisterhood, she might exercise the privilege of changing that mode of life and return to the world. That he designed a further disposition of the property involved in this suit in certain contingencies, is manifest from the concluding part of the fourth item of his will. In that, the testator provides as follows: "And in the mean time, that the surplus proceeds, rents, issues and profits of the same estate, be by the said James Davidson Mitchell invested in

some productive fund or stock for the use and benefit of the said Sarah Elizabeth Mitchell, if she should at any time hereafter determine to leave the sisterhood to which she may become united, *or* for the person or persons *entitled* to the same, agreeably to the provisions *hereinafter* contained."

By the fifth clause or item the testator bequeaths and devises thus: "And lastly, it is declared to be my will and desire, in the event of the death of my said daughter, Sarah E. Mitchell, without having been married, *or in case she should be united to any religious sisterhood as aforesaid, for ten years in immediate succession, that* said *property so devised and bequeathed in trust* for her as aforesaid, and all interest accrued upon the stock or fund aforesaid, as well as that stock or fund itself, *shall belong to, and devolve upon,* my aforesaid sons, Frances J. and Henry S. Mitchell, or the survivor of them, their or his *heirs*, executors, administrators and assigns, forever, *subject, however,* so long as the said Sarah Elizabeth Mitchell shall live, to the payment to her of the aforesaid annual sum of two hundred dollars, *and no more,* and to, for, or upon *no other use, trust, intent or purpose whatsoever.*"

It was insisted in argument by the appellee's counsel, that the word, *"or,"* in this clause of the will, should be construed *"and,"* thus requiring both contingencies to happen before the trust estate would cease. This is not our view. We regard them as alternative, and whichever might first happen would divest the title of the trustee and devolve the same upon the devisees named in that clause.

*Judgment reversed and procedendo awarded.*

(Decided June 19th, 1862.)