In the Matter of the Construction of the Will of ABRAHAM S. ROSENTHAL, Deceased.

Surrogate's Court, New York County, May 8, 1953.

*Jack M. Ginsberg (Charles Looker* and *Norma Hack* of counsel), as attorney and special guardian for Jean L. Tanburn, petitioner.

*Albert B. Maginnes, Leonard A. Blue* and *Douglas A. Witschieben* for Rhea S. Hoffheimer and others, as trustees under the will of Abraham Rosenthal, deceased, respondents.

*Leo H. Hirsch, Jr.,* for Samuel Feller and another, as executors of Stephen A. Tanburn, deceased, respondents.

*Nathaniel L. Goldstein, Attorney-General (P. Hodges Combier* of counsel), in his statutory capacity under section 12 of Personal Property Law and section 113 of Real Property Law, respondent.

COLLINS, S. The petitioner, Jean L. Tanburn, who will attain the age of twenty-one years on May 24, 1953, seeks a construction of certain provisions of the will of the testator, who was her great-grandfather. The will was admitted to probate in this court on May 26, 1938.

Broadly, the testator's will evinces a pattern to exclude from participation in his property descendants of his who marry non-Jews, and the non-Jewish spouses of such descendants.

Under the will, the testator's grandson, Stephen A. Tanburn, who was the petitioner's father, and who died on October 22, 1952, was granted certain powers of appointment. The petitioner is an appointee designated by her father's will.

A direct descendant of the testator, as defined in his will, and of the Jewish faith and blood, the petitioner recently became affianced to a person not born in the Jewish faith and not of Jewish blood. He is a reserve officer in the Army of the United States, has received orders to report for active service in June, 1953, and petitioner avers that it is the intention of the couple to marry prior to that date.

By reason of her engagement and contemplated marriage, the petitioner applies for a construction of Article Twelfth of the will to obtain a determination of her right to inherit as an appointee under the will of her father upon the occurrence of her contemplated marriage.

A motion to dismiss the petition as premature was denied.

The pivotal Article Twelfth is as follows:

" Twelfth: Anything herein contained to the contrary notwithstanding, all legacies and devises and all powers of appointment or disposition under this my Last Will and Testament, given, devised and bequeathed to any child of mine or to any descendant of mine, are given, devised and bequeathed subject to the following express condition, that is to say:

" In case any child or descendant of mine shall at the time of my death be married or shall thereafter marry, and the spouse of such child or descendant of mine shall be a person who was not born in the Jewish faith and who shall not be of Jewish blood, then upon my death if such marriage shall have

occurred prior thereto, or if such marriage shall occur after my death then upon such marriage, all legacies and devises whether of income or of principal to such child or descendant of mine so marrying, and all powers of appointment or of disposition given, devised and bequeathed to such child or descendant of mine so marrying, shall be cancelled, annulled and revoked and such legacies and/or devises whether of principal or income shall upon my death if such marriage shall occur prior to my death, or upon such marriage if such marriage shall have occurred after my death, be disposed of as though such child or descendant of mine had died before me if such marriage shall have occurred prior to my death, or had died at the time of such marriage if such marriage shall occur after my death, without power to appoint or dispose of any of the income or principal of my estate; and provided further that any husband and/or wife, who shall not have been born in the Jewish faith and who shall not be of Jewish blood, of any such child or descendant of mine and any descendant of mine who shall not have been born in the Jewish faith and who shall not be of Jewish blood shall not be entitled to take any share or interest in the principal and/or income of my estate either as legatee, devisee, appointee, heir at law or next of kin, distributee or otherwise; and wherever upon the death of any child or descendant of mine there is a gift over of any of the income or principal of my estate to any child or descendant of mine who shall be married at my death or who shall thereafter marry, and the spouse of such child or descendant shall not be a person who was both born in the Jewish faith and of Jewish blood, then the legacy or devise to such child or descenant shall be and the same hereby is cancelled, annulled and revoked and such legacy or devise shall be given over and I give, devise and bequeath the same to the person or persons who would be entitled thereto in case the said child or descendant of mine had died before me, if such child or descendant shall be married at my death, or at the time of such marriage in case such marriage shall occur after my death; and wherever in my Will there is a gift over to a class of persons, some of whom were born in the Jewish faith and are of Jewish blood and some of whom are not of said faith and blood, distribution shall be made only to those members of the class who are of such faith and blood in the same manner as though all of the members of such class who were not born in the Jewish faith and who are not of Jewish blood had been dead at the time of the taking effect of the said gift over, and in case no mem-

ber of the class is of such faith and blood the said gift over shall continue to pass until it vests in those members of a class who were born in the Jewish faith and who are of Jewish blood; and I give, devise and bequeath the same accordingly; provided further, that the conclusion of my Executors and/or Trustees from time to time acting as such as to whether any legatee and/or devisee under this my Last Will and Testament was born in the Jewish faith and is of Jewish blood shall be conclusive and binding upon all persons interested in my estate and shall not be subject to review by any court or other authority whatsoever. Wherever I have herein referred to ' the Jewish faith ' each such reference shall mean the Jewish faith as it may at any time and from time to time in any form be practised.

"It is my intention for the purposes of this Will that the marriage of my grandson Alfred S. Meyer heretofore dissolved by decree of the Second Judicial District Court of the State of Nevada, in and for the County of Washoe, on the 24th day of December, 1934 shall not be considered a marriage, irrespective of whether said divorce is legal or not."

Article Eighth I and II of the testator's will, " subject to the conditions and provisions " of Article Twelfth, gives, devises and bequeaths the residuary portion of the estate to trustees who are directed to divide the residuary estate into two equal parts, each to be held as a separate trust fund. The first of the trusts is to continue during the lives of the testator's daughter, Rhea Sittenfield (now Rhea Hoffheimer) and her son, Stephen A. Tanburn, the petitioner's father. The trust directs the trustees to pay over substantially half of the income to Mrs. Hoffheimer, and the other half to Mr. Tanburn during their respective lives. Upon Mr. Tanburn's death, the portion of the income payable to him is directed to be paid over to persons appointed by him in his last will and testament. He was also given a power of appointment with respect to all of the principal of this trust upon its termination.

Although Mr. Tanburn is dead, his mother, Mrs. Hoffheimer, is alive, and the trust continues. By Mr. Tanburn's will he exercised the powers of appointment in such a manner that all of the income from this first trust in excess of the amount appointed to Mr. Tanburn's widow (petitioner's mother) is payable to the petitioner. Petitioner estimates that she, if not disqualified, will be entitled to receive income of about $6,500 a year as a result of this appointment. With respect to the principal of this trust presently valued at $675,000, Mr. Tan-

burn appointed it to the petitioner upon its termination, or if petitioner be dead, to the testator's grandson, Alfred S. Meyer, or if he be dead, to charities to be designated by his executors.

The second trust is for the benefit of the testator's other daughter, Gladys Stern, and her son, Alfred S. Meyer. Its terms are similar to those of the first trust except that it does not confer powers of appointment on Mr. Meyer, but instead, bequeaths income, during the life of the trust, and principal, upon termination of the trust, to Mr. Meyer's widow and his descendants.

Although this proceeding is primarily concerned with the first of the two trusts, the petitioner may become entitled to the principal of the second trust, upon the termination of that trust, without Mr. Meyer, who is unmarried, leaving a widow or descendants then living — subject however, as stated, to Article Twelfth.

In addition, under Article Seventh (d) of the testator's will the petitioner is the beneficiary of a $10,000 trust which will be payable to her outright on her twenty-first birthday unless she dies or becomes ineligible under Article Twelfth by reason of her contemplated marriage.

Petitioner does not here contend that she would be entitled to benefit under Article Eighth II (the second trust) if Article Twelfth is valid; neither does she here contend that on her next birthday she will become entitled to the $10,000 legacy under Article Seventh (d) in the event of her contemplated marriage.

Even so, apart from the incalculable human factors, the petitioner's financial stake in the application of Article Twelfth is substantial. To be sure, the governing principles of law are the same regardless of the amount involved.

The petitioner maintains that Article Twelfth does not disqualify from appointment a descendant born of Jewish parentage though such appointee marry out of the Jewish faith; that "the express disqualification from appointment of other classes clearly evidences testator's intention to permit appointment to such a descendant". Furthermore, she maintains, the "disqualification is expressly limited to property passing under the testator's will", whereas her "right to inherit derives from the will of the donee of the power of appointment", her father.

The trustees of the trusts under the testator's will contend that no descendant of Abraham S. Rosenthal who violates its terms can take any benefit either in income or principal in

any of the trusts under the will, and that specifically, if the petitioner marries her present fiance she cannot receive any income or principal of any of the trusts under the will.

The Attorney-General of the State of New York, in behalf of the contingent charitable beneficiaries, advances a similar thesis.

The executors and trustees of the Tanburn estate take no position as to the manner in which Article Twelfth should be construed.

The petitioner's insistence that the court should not impose a hardship upon her " by a process of interpretation based principally on surmise and inference ", is, of course, a guiding rule of construction.

The court also agrees with the petitioner's point that the " will was drawn by distinguished attorneys and with great skill ", and that " it is obvious that meticulous care was taken to leave nothing to inference ". The court also is in accord with the petitioner's argument that inasmuch as the language of the testator's will is unambiguous, the testator's intent must be ascertained from the will itself and that the suggested hearing for the reception of extrinsic evidence of intent is unnecessary.

The court does not subscribe to the petitioner's position that " the court need not at this time determine the validity or invalidity " of Article Twelfth. " Such a determination ", she argues, " would be premature and might seriously prejudice petitioner's rights ".

Inasmuch as the petitioner seeks a determination of the application of Article Twelfth to her contemplated marriage, determining the validity of the article is unavoidable. One who accepts a benefit under a will must adopt the whole contents of the instrument, conforming to all its provisions and renouncing every right inconsistent with it. He is driven to a choice between the assumption of the burden and the rejection of the bounty. (*Oliver* v. *Wells,* 254 N. Y. 451, 458, 459; *Beetson* v. *Stoops,* 186 N. Y. 456.)

Conceding that, as the petitioner protests, " forfeiture clauses that shackle posterity in choice of mate are not favored ", and therefore " they are most strictly construed ", the rule, nevertheless in New York is that " Conditions in partial restraint of marriage, which merely impose reasonable restrictions upon marriage, are not against public policy ". (*Matter of Liberman,* 279 N. Y. 458, 464.) Construing the condition in *Matter of Seaman* (218 N. Y. 77), the court, at page 81, said: " the

condition is designed to prevent the marriage of the testator's daughter with a particular individual who is named in his will; and such prohibitions have not only received the sanction of judicial authority but we think may be justified by sound reasoning ''.

In *Matter of Weil* (124 Misc. 692, affd. 216 App. Div. 701) Surrogate FOLEY upheld a prohibition against marrying outside the Jewish faith. A legacy conditioned on the legatee being reared as a Roman Catholic was upheld in *Matter of Kempf* (252 App. Div. 28, affd. 278 N. Y. 613. See, also, *Matter of Salomon,* 156 Misc. 445, 447; 2 Schouler on Wills, Executors and Administrators [6th ed.], § 1351, and 2 Jarman on Wills [7th ed.], p. 1497.)

Article Twelfth is explicit, its intent persuasive. The article declares that no descendant of the testator who marries a person not born in the Jewish faith and not of Jewish blood can take any legacy or devise of income or principal or have any power of appointment.

Another telling provision of the testator's will further illuminating his design is Article Fourth, which provides: '' Fourth: I have heretofore given to each of my daughters, Rhea Sittenfield, of New York City, New York, and Gladys Stern, of New York City, New York, certain articles and pieces of jewelry which belonged to their mother, my beloved wife, Hannah Rosenthal, and it is my wish and desire that each of my daughters shall always keep said jewelry so given to each of them and that each of them shall give said jewelry by Will or otherwise to her children and/or her children's children who shall not have married outside of the Jewish race and faith, with the request that the donees make similar disposition thereof to the end that said jewelry may as long as possible remain in the direct line of my family who shall be of the Jewish faith and race as family heirlooms and remembrances.''

As noted, the petitioner maintains that because she claims only under the appointment made to her under the will of her father, who indisputably was fully qualified to exercise the appointment, she does not come within the disqualification of Article Twelfth. She asserts that the introduction and the first part of the article are made specifically applicable to benefits given and granted by the testator by his own testamentary disposition, that those benefits which the testator sought to withhold were legacies, devises and powers of appointment under *his* will; that by its express terms the first part

of the article disqualifies the donee of the power of appointment, but does not apply to the appointee of that power. She argues that there was a clear distinction in the testator's mind between a legacy under his own will and an appointment made under the will of another.

The petitioner's position runs counter to the express language and clear intent of the testator's will and to the law governing the petitioner's status as appointee. The first part of the will is a restriction on gifts to descendants who marry non-Jews; the provision immediately following is a restriction on gifts to non-Jewish spouses and descendants of descendants who marry non-Jews.

The source of the petitioner's right to inherit is the testator's will, not the will of the donee of the power of appointment, her father. " [T]hose who take under a power of appointment, take as if their names were in the grant of the power ". (*Matter of Harbeck,* 161 N. Y. 211, 218, 219.) " The wills of the donor and donee must be read together as part of the same instrument * * * the property now accounted for is not the property of the donee but of the donor and must remain the property of the donor until it absolutely vests in some person or corporation. A donee with a power to appoint by will is a mere agent of the donor ". (*Matter of Walbridge,* 178 Misc. 32, 35, 37; 3 Jessup Redfield, Surrogates Law and Practice, §§ 2645, 2648; 7 Warren's Heaton on Surrogates' Courts, pp. 477, 488.)

The right to receive the income from the trust in issue derives from Article Eighth I (4) of the testator's will and is the " income which would otherwise have been payable to the said Stephen A. Tanburn * * * ".

Article Eighth I (5) of the will which disposes of the principal or corpus of the trust fund in question provides: " Upon the termination of the said trust, my Trustees shall transfer, convey and pay over and I hereby give, devise and bequeath the principal or corpus of the said trust fund to such person or persons, in such proportions and upon such conditions as my said grandson, Stephen A. Tanburn may in his Last Will and Testament appoint and prescribe ".

Obviously, the concern here is with the testator's property, not that of Tanburn; the giver is the testator, not Tanburn; the instrument creating the gift is the testator's will, not the Tanburn will. The Tanburn will is the medium, Tanburn the " mere agent " of the testator. It is the testator's trustees who are directed to effect the transmission of income and corpus subject, it bears emphasis, to the express conditions of Article Twelfth.

The exercise of the powers of appointment in the petitioner's behalf by her father did not terminate or free the conditions imposed by Article Twelfth. As an appointee the petitioner, if she is to benefit by the appointment, must assume those conditions.

The authority stressed by the petitioner (*Matter of Salomon, supra*), is not a pattern for this situation. There, unmarried great-grandchildren in whose favor a power of appointment was exercised by a non-offending relative, were innocent of any contravention of the prohibition. Surrogate DELEHANTY, construing the peculiar terms of the will there involved, held that since the claimants were not " offspring " of the donee, and had not married, they themselves had not breached the condition and furthermore, since the donee of the power had not breached the condition the prohibition was not operative. The interdiction there was not as comprehensive and far-reaching as is the interdiction here.

The court determines that if the petitioner marries a person not of the Jewish faith and blood she will forfeit her right to inherit as an appointee under the will of Stephen A. Tanburn.

The petitioner's situation commands the court's sympathy. It is unfortunate that she cannot have both a marriage with the man of her choice *and* the inheritance. Present are considerations which tug at the heart but do not resolve the legal queries propounded by the petition. Undeniably, Article Twelfth is discriminatory but to discriminate in the disposition of property is frequently the motivation of a will. A testator " may exclude a child or other descendant from any participation in his estate for sound reason, or because of whim or prejudice which might seem unreasonable to others ". (*Matter of Liberman, supra*, p. 463.) The court is compelled to uphold the manifest intent of the testator's will. The determination here was written into that will and is binding on the petitioner.

Submit decree construing the will accordingly.