THIRD DIVISION
JUNE 30, 2008

1-06-2823)
1-06-2824)
1-06-2843) Cons.

| | | |
|---|---|---|
| *In re* ESTATE OF MAX FEINBERG, | ) | Appeal from the |
| | ) | Circuit Court of |
| Deceased. | ) | Cook County. |
| | ) | |
| (Leila R. Taylor, as Independent Coexecutor of the Will of Max Feinberg, Deceased, | ) | |
| | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | Nos.   05 P 0173 |
| Michael B. Feinberg, Individually and as Coexecutor of | ) | 04 P 5093 |
| the Will of Max Feinberg, Deceased; Fifth Third Bank, as | ) | 04 L 07195 |
| Trustee under the Trusts of Max Feinberg, Deceased; Michele | ) | |
| Trull, neé Feinberg, Aron Feinberg, Lisa Taylor-Schroeder; | ) | |
| Jon Taylor, Aimee Taylor-Severe; and The Unknown or Unborn | ) | |
| Descendants of Leila R. Taylor, Michael B. Feinberg, Michele | ) | |
| Trull neé Feinberg, Lisa Taylor-Schroeder, Jon Taylor, and | ) | |
| Aimee Taylor-Severe; and The Known Descendants of Lisa | ) | |
| Taylor-Schroeder, Jon Taylor, and Aimee Taylor-Severe, | ) | Honorable |
| | ) | Susan H. Coleman, |
| Defendants-Appellees). | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the opinion of the court:

This is an interlocutory appeal from an order of the circuit court of Cook County striking

down the testamentary provision that presents the following question. Can an Illinois court enforce

a testamentary provision that any of the testator's grandchildren who marry outside the Jewish faith,

1-06-2823)
1-06-2824)
1-06-2843) Cons.

unless the spouse has converted or converts within one year of the marriage to the Jewish faith, will, for purposes of the testamentary instrument, be deemed to be deceased, along with all of his or her descendants? We find that such a provision is unenforceable because it is contrary to public policy. We therefore affirm the judgment of the circuit court of Cook County.

BACKGROUND

The caption of this litigation suggests that it involves several parties and different lawsuits and many issues. The narrow issue before this court is outlined above. Max and Erla Feinberg established trusts to distribute their considerable assets after their deaths. Max died on December 4, 1986, and Erla died on October 1, 2003. Max and Erla were survived by two children, Michael and Leila. They were also survived by five grandchildren, Michele Trull, Aron Feinberg, Lisa Taylor-Schroeder, Jon Taylor, and Aimee Taylor-Severe. At the time of this lawsuit, all of the grandchildren had married, and only Jon was married to a person of the Jewish faith, by birth or conversion. Max's trust contained the following provision, which the parties refer to as the Jewish clause:

> "3.5(e) A descendant of mine other than a child of mine who marries outside the Jewish faith (unless the spouse of such descendant has converted or converts within one year of the marriage to the Jewish faith) and his or her descendants shall be deemed to be deceased for all purposes of this instrument as of the date of such marriage."

2

1-06-2823)
1-06-2824)
1-06-2843) Cons.

This appeal involves three cases arising out of the aforementioned trusts. The first case was the probate of Erla's estate. The second case, chronologically, was a case brought by the granddaughter of Max and Erla, Michele Trull, against the co-executors of Max and Erla's estates, Leila Taylor, Michael Feinberg, and Marshall Taylor (Leila's husband), alleging that those three defendants conspired to evade estate taxes and misappropriated millions of dollars from both Max's and Erla's estates. The third case involved Max's estate and was filed in 2005, when it was discovered that the co-executors were allegedly holding stock certificates registered to Max, nearly 20 years after his death, which they had failed to transfer to Max's estate.

Before these cases were consolidated, Leila Taylor, Marshall Taylor and Michael Feinberg, the defendants in Michele's lawsuit (the 2nd case) sought to have that lawsuit dismissed because it was brought by Michele and under the provision of the Jewish clause in Max's will, Michele was deemed to be deceased and therefore had no interest in the estate. Michele also filed a motion in the case involving Erla's estate (the 1st case), asking that the Jewish clause be invalidated and that the funds from Max's trust be distributed pursuant to Erla's power of appointment. Leila Taylor and Marshall Taylor filed a petition in the case involving Max's estate (the 3rd case), again asserting that pursuant to the Jewish clause Michele is deemed to be deceased. These three cases were then consolidated in the circuit court and the trial judge held that the Jewish clause was invalid because it was against public policy. This appeal followed.

ANALYSIS

In this interlocutory appeal, we address only the purely legal question of the validity of the

3

1-06-2823)
1-06-2824)
1-06-2843) Cons.

trust provision at issue and therefore we review the circuit court's determination *de novo*. Steinbrecher v. Steinbrecher, 197 Ill. 2d 514, 523, 759 N.E.2d 509, 515 (2001). As early as 1898, our supreme court set forth the general rule that testamentary provisions which act as a restraint upon marriage or which encourage divorce are void as against public policy. Ransdell v. Boston, 172 Ill. 439, 445, 50 N.E. 111, 114 (1898). However, the court in Ransdell found that this rule was inapplicable to the facts before it because it was clear that the marriage at issue was already in disrepair, with the parties separated, at the time the provision was created. Nonetheless, subsequent Illinois courts have reaffirmed the underlying principle that testamentary provisions are invalid if they discourage marriage or encourage divorce. Thus, in In re Estate of Gerbing, 61 Ill. 2d 503, 507-08, 337 N.E.2d 29, 32-33 (1975), the court invalidated a will provision providing, *inter alia*, that a trust would terminate and the corpus would go to the testator's son if the son obtained a divorce. The clause in question stated:

> " 'In the event my said son's wife, ARLIE GERBING predeceases my
> son, FRANK GERBING, JR., or in the event ARLIE GERBING and
> FRANK GERBING, JR. are divorced and remain divorced for a
> period of two (2) years, then in either event this trust shall terminate
> and my trustee is directed to pay, turn over and deliver the remaining
> principal of the trust property and all accrued dividends or interest
> accumulated thereon to my said son. In the event my son, FRANK
> GERBING, JR., predeceases his wife, ARLIE GERBING, then I

4

> direct my trustee to deliver the remaining principal of the trust property together with all accrued or undistributed net income therefrom to my sister, KATHERINE SIEBOLD GRIGG, if she survives my said son. If my said sister predeceases my son, FRANK GERBING, JR., then upon the death of my said son, I direct my trustee to deliver the remaining principal of the trust property and all accrued or undistributed net income therefrom to ROBERT GRIGG, if living, or if ROBERT GRIGG is not living at that time, to his children living at the date of the death of FRANK GERBING, JR., share and share alike.' " Gerbing, 61 Ill. 2d at 505, 337 N.E.2d at 31.

In Winterland v. Winterland, 389 Ill. 384, 386-87, 59 N.E.2d 661, 662 (1945), the court invalidated a will provision which, *inter alia*, left a life estate to the testator's wife with the remainder to all of his children except that the share of one son, George, would be held in trust for him and the corpus given to him only upon his divorce or the death of his wife. The clause in question in that case stated:

> " 'I now modify the Third Clause of said Original Will and direct and will that the equal share therein contemplated to be given to my son, George Winterland, if he should survive me, is given, devised and bequeathed to my son Henry Winterland, but in trust nevertheless that he shall keep said share safely invested and pay the

5

income therefrom in cash into the hands of my said son George, so long as he may live or until his present wife shall have died or been separated from him by absolute divorce. If either of those events shall occur during the life of my said son, George, then the principal of said share shall be paid to him, my said son George, as his absolute and unlimited estate. If, however, my said son George shall die prior to my death or having survived me shall die prior to the occurring of either of the two possible events aforesaid, then the principal of his said share shall be divided and is given by me equally between my children then surviving, or if any of such children shall have died leaving children him or her surviving, then such children shall take the share the parent would have taken, if living.' " Winterland, 389 Ill. at 385, 59 N.E.2d at 662.

The language and circumstances of the aforementioned clauses, which Illinois courts have found to be against public policy, are strikingly similar to the instant case. We see no reason to depart from this well-established principle.

However, some other states do not follow the uniform precedent of Illinois in validating such provisions. Shapira v. Union National Bank, 39 Ohio Misc. 28, 29-39, 315 N.E.2d 825, 827-32 (1974) (upholding provision requiring decedent's son to marry, within seven years of testator's death, a Jewish girl born of two Jewish parents); In re Silverstein's Will, 155 N.Y.S.2d 598, 599-

1-06-2823)
1-06-2824)
1-06-2843) Cons.

600 (Sur. Ct. 1956) (upholding requirement of marriage to person of the Jewish faith); Gordon v. Gordon, 332 Mass. 197, 203-08, 124 N.E.2d 228, 231-33 (1955) (upholding provision revoking gifts to beneficiaries who married persons not born in the Jewish faith). *Contra* In re Keffalas' Estate, 426 Pa. 432, 435, 233 A.2d 248, 250 (1967) (struck down as encouraging divorce and against public policy a provision that testator's three eldest sons must divorce any wives of a different faith and marry Greek Orthodox women in order to inherit). For an excellent discussion of this area of the law, see J. Sherman, *Posthumous Meddling: An Instrumentalist Theory of Testamentary Restraints on Conjugal and Religious Choices*, 1999 U. Ill. L. Rev. 1273, 1329 (arguing that no restraints on the personal behavior of a legatee should be enforced). For another general discussion, see Annotation, *Validity of Provisions of Will or Deed Prohibiting, Penalizing, or Requiring Marriage to One of a Particular Religious Faith*, 50 A.L.R.2d 740 (1956).

The Restatement Third of Trusts provides that trust provisions which are contrary to public policy are void. It gives as a specific example a provision that all of a beneficiary's rights to a trust would terminate if he married a person who was not of a specified religion:

> "*j.* Family relationships. A trust or a condition or other provision in the terms of a trust is ordinarily *** invalid if it tends to encourage disruption of a family relationship or to discourage formation or resumption of such a relationship. ***
>
> ***
>
> In addition, a trust provision is ordinarily invalid if it tends

7

> seriously to interfere with or inhibit the exercise of a beneficiary's freedom to obtain a divorce *** or the exercise of freedom to marry *** by limiting the beneficiary's selection of a spouse ***. ***
>
> ***
>
> 3. The marriage condition terminates all of [settler's nephew] N's rights if, before termination of the trust, he 'should marry a person who is not of R Religion,' with the same gift over to C College. The condition is an invalid restraint on marriage; the trust and N's rights will be given effect as if the marriage condition and the gift over to C College had been omitted from the terms of the trust." Restatement of Trusts §29, Explanatory Notes, Comment *j*, Illustration 3, at 62-64 (3d ed. 2003).

We hold that under Illinois law and under the Restatement (Third) of Trusts, the provision in the case before us is invalid because it seriously interferes with and limits the right of individuals to marry a person of their own choosing. We are not persuaded by the contention that this is a new rule which should only be applied prospectively. As we have noted, similar holdings in which Illinois courts have found similar provisions to be against public policy date back to 1898. Nor are we persuaded by the defendants' argument that the trust provision was to be applied at the time of Erla's death and therefore did not affect future behavior. The provision's clear intent was to influence the marriage decisions of Max's grandchildren based on a religious criterion and thus to discourage marriage by

8

1-06-2823)
1-06-2824)
1-06-2843) Cons.

the grandchildren other than to those of the Jewish faith. This provision violated public policy, as the circuit court correctly held. As there is clearly a nonconstitutional basis on which to resolve this issue, we need not determine whether the provision is also a violation of the state and federal constitutions. People v. Brown, 225 Ill. 2d 188, 200, 866 N.E.2d 1163, 1170 (2007).

We affirm the order of the circuit court of Cook County and remand for further proceedings.

Affirmed and remanded.

PRESIDING JUSTICE QUINN, specially concurring:

I completely concur with Justice Cunningham's majority opinion. I write separately to express the bases of my disagreement with Justice Greiman's dissent. The dissent asserts that "Max and Erla had a dream," and that they "seek to preserve their 4,000-year-old heritage by providing that upon their death, a grandchild who married outside of the Jewish faith shall be deemed to have predeceased the testators." Slip op. at 9 (Greiman, J., dissenting) Unfortunately, this noble defense of "the Jewish Clause" is refuted by the appellants themselves. As the appellants point out in their reply brief, "If Max were truly trying to prevent marriages outside the Jewish faith, Michael asserts he would have included his children [the appellants] as being subject to the Jewish Clause." Further, "if a Feinberg grandchild were to convert to Catholicism there is no restriction on that grandchild receiving his or her distribution under the Max Trust B."

The purpose of the instant suit is succinctly stated in the appellants' opening brief:

"The plain meaning of the Jewish Clause indicates that for purposes

of the administration and distribution of Max's Trust, each of Aron,

9

> Aimee, Lisa and Michele and their respective descendants should be treated as deceased and therefore not eligible to receive any benefit from Max's Trust. Pursuant to Erla's Power of Appointment, the specific bequests of $250,000 due to Aron and Michele would be distributed to their father, Michael and the similar bequests due Aimee and Lisa would be distributed to their mother, Leila."

Simply put, Leila and Michael wish to deprive their own children of their inheritance. In support of this position, the appellants point out, "The forfeiture to the parent will allow the beneficiary to potentially inherit the funds from his or her parent." If Michael and Leila's actions in instituting this suit and prosecuting this appeal is any indication of their future intentions toward their children, this potential inheritance does not rise to the level of even a forlorn hope.

The first thing any reader of the majority opinion and the dissent should note is the age of the cases cited. The majority cites one case less than 50 years old, In re Estate of Gerbing, 61 Ill. 2d 503, 337 N.E.2d 29 (1975). The dissent cites two: In re Estate of Laning, 462 Pa. 157, 164, 339 A.2d 520, 523 (1975), and Shapira v. Union National Bank, 39 Ohio Misc. 28, 33, 315 N.E.2d 825, 829 (1974). The Laning court relied on the Restatement (Second) of Trusts §62 (f), (g) (1959). The Shapira court similarly cited the Restatement (Second) of Trusts §62(h) (1959). Two cases cited by the dissent relied on the Restatement (First) of Trusts: United States Bank of Portland v. Snodgrass, 202 Or. 530, 537, 275 P.2d 860, 868 (1954), which cited section 62(g) and Gordon v. Gordon, 332 Mass. 197, 206, 124 N.E.2d 228, 234 (1955), which cited Annotation, Conditions,

10

Conditional Limitation or Contracts in Restraint of Marriage, 122 A.L.R.7 (1939).

In the instant case, the circuit court relied on the language of the Restatement (Third) of Trusts §29, Comment;, Illustration 3, at 64 (2003), as found in the majority opinion. The Restatement (Third) of Trusts has previously been cited as persuasive authority by this court in Peck v. Froehlich, 367 Ill. App. 3d 225, 229, 853 N.E.2d 927 (2006), citing Restatement (Third) of Trusts §50, Comment E (4), at 273-74 (2003).

While the dissent frames the issue as being whether Max and Erla could make testamentary dispositions "to preserve their 4,000-year-old heritage," the position it espouses could just as well result in the courts being required to enforce the worst bigotry imaginable. As the dissent points out, the court in In re Liberman, 279 N.Y. 458, 18 N.E.2d 658 (1939), cited as persuasive authority cases which upheld conditions not to marry "Papists" or Scots. Logically, the dissent would uphold the "Jewish Clause" in the instant case if it had provided that any of Max and Erla's grandchildren would lose their bequests if they had married someone who was Jewish or black or a member of any other group Max did not like. I agree with the dissent that the majority of jurisdictions which have addressed this issue have come down on the side of upholding testamentary conditions which are referred to benignly as "partial restraints." However, the vast majority of these cases were decided more than 50 years ago and none of them considered the Restatement (Third) of Trusts.

In Shelley v. Kraemer, 334 U.S. 1, 92 L. Ed. 1161, 68 S. Ct. 836 (1948), the Supreme Court relied on the fourteenth amendment in striking down privately executed restrictive covenants prohibiting real property from being used or occupied by any persons except those of the Caucasian

11

race.  In doing so, Chief Justice Vinson noted, "These are cases in which the purposes of the agreements were secured only by judicial enforcement by state courts of the restrictive terms of the agreements."  Shelley v. Kraemer, 334 U.S. at 13, 92 L. Ed. at 1180-81, 68 S. Ct. at 842.  I am aware that the Shapira court rejected the applicability of Shelley to cases such as the instant one, holding:

> "In the case at bar, this court is not being asked to enforce any restriction upon Daniel Jacob Shapira's constitutional right to marry. Rather, this court is being asked to enforce the testator's restriction upon his son's inheritance."  Shapira v. Union National Bank, 39 Ohio Misc. at 31, 315 N.E.2d at 827.

However, I believe that this rationale may be a distinction without a difference.

I am also aware that the restrictive covenants considered in Shelley ostensibly were to be enforced in perpetuity and that under the Rule Against Perpetuities, a noncharitable trust generally can last for no more than three generations, so a testator's imposition of limitations can usually only be enforced for 75 years.  J. Sherman, *Posthumous Meddling: An Instrumentalist Theory of Testamentary Restraints on Conjugal and Religious Choices*, 1999 U. Ill. L. Rev. 1273, 1280. However, I believe that requiring courts to enforce such restraints even for only 75 years is too much. One of the decisions relied upon by the dissent illustrates the difficulties which face courts in attempting to enforce certain "partial restraints."  In In re Kempf Will, 252 A.D. 28, 297 N.Y.S. 307 (1937) the court interpreted the following testamentary condition:

> "The bequest of a legacy on condition that the beneficiary ' shall be

> brought up and educated in the faith of and according to the Roman
>
> Catholic Religion, otherwise this paragraph of this, my last will and
>
> testament, shall cease and be void and of no effect.' "

The court held that the beneficiary failed to comply with this condition even though he had been baptized as a Catholic, attended Catholic Sunday school and attended mass at various Roman Catholic churches with "reasonable regularity" for years. The beneficiary had missed attending his first communion due to illness and never received communion. The court found that this failure violated the testamentary condition and, therefore, the bequest to the beneficiary was denied.

In the instant case, the appellees question what would occur if one of the grandchildren initially married a non-Jew but subsequently married a Jew. Under the "Jewish Clause" the grandchild would be deemed to be deceased as of the date of the first marriage. The question arises as to whether the grandchild would be "resurrected" upon marrying the Jewish spouse. While the question is only theoretical, it is a very likely scenario. I believe that courts are ill-suited to decide this issue or the issue presented in Kempf.

As quoted in the dissent, "It is generally held in this country that partial restraints on marriage are valid unless unreasonable ***. Gordon v. Gordon, 332 Mass. at 206, 124 N.E.2d at 234." Slip op. at 234. While the Restatement (First) and (Second) of Trusts explained that restraints such as the instant "Jewish Clause" were once considered reasonable, the Restatement (Third) of Trusts now provides that they are no longer reasonable. While many jurists, notably the Justices of the United States Supreme Court who adhere to the principle of following the "original intent" of the framers

13

of the constitution believe in a static jurisprudence, the authors of the Restatements do not. I believe the Restatement (Third) of Trusts §29 (2003) is correct and I concur in affirming the circuit court's well-reasoned decision.

JUSTICE GREIMAN, dissenting:

Max and Erla Feinberg seek to preserve their 4,000-year-old heritage by providing that upon their death, a grandchild who married outside the Jewish faith shall be deemed to have predeceased the testators, but if they have complied with the restrictions, are to immediately receive their legacy.

The majority opinion cites three Illinois cases which are wholly inapposite to the case at bar. In these three cases, Ransdell v. Boston, 172 Ill. 439, 50 N.E. 111 (1898), In Re Estate of Gerbing, 61 Ill. 2d 503, 337 N.E.2d 29 (1975), and Winterland v. Winterland, 389 Ill. 384, 59 N.E.2d 661 (1945), the testators provided that their descendants would not get the principal of the estate if they remained married to their then current spouses. Clearly this was an effort to direct the legatee-descendants to obtain a divorce. The Illinois courts held such a provision to be against the public policy of our state.

Unlike the several cases that the majority opinion cites relating to divorce, the trustees here are not required to hold the property during the lifetime of descendants after the death of the testators.

The majority opinion in a single paragraph acknowledges that there is precedent to the contrary in other states. Examination of cases from other jurisdictions, however, indicates that we would be in the minority if we failed to uphold Max and Erla's limitation.

14

1-06-2823)
1-06-2824)
1-06-2843) Cons.

In Gordon v. Gordon, 332 Mass. 197, 124 N.E.2d 226 (1955), the Supreme Court of Massachusetts upheld a provision revoking gifts to beneficiaries who married persons not born in the Jewish faith. The court observed: "It is generally held in this country that partial restraints on marriage are valid unless unreasonable. [Citations.] Thus, testamentary gifts conditioned on the beneficiary not marrying a specified individual have been upheld." Gordon, 332 Mass. at 206, 124 N.E.2d at 234, citing Turner v. Evans, 134 Md. 238, 106 A. 617 (1919); Graydon's Executors v. Graydon, 23 N.J. Eq. 229 (1872); In re Proving the Will of Seaman, 218 N.Y. 77, 112 N.E. 576 (1916); Osborne's Petition, 21 Pa. D. & C. District 293, (1934); Pacholder v. Rosenheim, 129 Md. 455, 99 A. 672 (1916) (holding that "a requirement *** not marrying outside the Jewish faith was also good").

In re Liberman, 279 N.Y. 458, 464, 18 N.E.2d 658, 660 (1939), the New York appellate court observed "[c]onditions not to marry a Papist *** or a Scotchman or not to marry any but a Jew have also been held good." Although the Liberman case invalidated a provision requiring the beneficiary to marry only with the consent of his mother, brother or sister, the court did so not because the provision was intended to restrain the beneficiary from marrying anyone other than a Jewess but, rather, because it found the consent feature invalid.

Similarly, in In re Weil's Estate, 124 Misc. 692, 209 N.Y.S. 779 (1925), In re Salomon's Estate, 156 Misc. 445, 281 N.Y.S. 827 (1935), and In re Rosenthal's Estate, 204 Misc. 432, 123 N.Y.S. 2d 326 (1953), the respective courts found that similar provisions of forfeiture were valid. In upholding a provision in the testator's will prohibiting beneficiaries from inheriting should they

15

"marry a person of a different religious faith from mine," the Weil court stated, "It is well settled that a condition in general restraint of marriage is void and inoperative as against public policy. [Citation.] On the other hand, however, a clause in special restraint of marriage, such as prohibition of marriage to a person outside of a particular faith or to a designated person, is in the ordinary course valid." In re Weil's Estate, 124 Misc. at 695, 209 N.Y.S. at 781.

The issue in the case at bar is not necessarily a Jewish issue. A similar rule obtained in United States Bank of Portland v. Snodgrass, 202 Or. 530, 275 P.2d 860 (1954), where the Oregon Supreme Court upheld a limitation that the legatee had "not embraced, nor become a member of, the Catholic faith" (Snodgrass, 202 Or. at 534, 275 P.2d at 862) and stated that it agreed with the conclusion set forth in American Law Reports that the "'weight of authority, however, is to the effect that a testator has the right to make the enjoyment of his bounty dependent on the condition that the recipient renounce, embrace, or adhere to a particular religious faith'" (Snodgrass, 202 Or. at 584, 275 P.2d at 868, quoting A.S.M., Wills: Condition that Devisee or Legatee Shall Renounce, Embrace, or Adhere to Specified Religious Faith, 25 A.L.R. 1523, 1524 (1923)). In support thereof, the Snodgrass court cited Barnum v. Mayor & City Council, City of Baltimore, 62 Md. 275 (1884), Mitchell's Lessee v. Mitchell, 18 Md. 405 (1862), In re Paulson's Will, 127 Wis. 612, 107 N.W. 484 (1906), as well as a number of English cases.

Gifts which are conditioned upon children being brought up and educated in the faith of and according to the Roman Catholic religion have been held as valid. In re Kempf Will, 297 N.Y.S. 307, 312, 252 A.D. 28, 32 (1937), the New York Supreme Court, after observing the federal

16

1-06-2823)
1-06-2824)
1-06-2843) Cons.

constitution's first amendment, stated:

"These constitutional guarantees of religious freedom are limitations upon the power of government, not upon the right of an individual to make such testamentary disposition of his property as he may desire provided always that positive law or public policy is not contravened. We find nothing in the condition here in question which deprives the petitioner of freedom of conscience as to his religion; nor is it against public policy. *** Having chosen to make the petitioner an object of his bounty, the testator had the right to burden his gift with conditions."

A similar provision was upheld by the Delaware Court of Chancery in Delaware Trust Co. v. FitzMaurice, 27 Del. Ch. 101, 31 A.2d 383 (1943), while the Supreme Court of Pennsylvania, in In re Estate of Laning, 462 Pa. 157, 160, 339 A.2d 520, 521 (1975), enforced a testamentary condition that required that the testator's grandchildren be "members in good standing of the Presbyterian church."

The concurring opinion mentions the reference to the Restatement (Third) of Trusts in the majority opinion and then cites Peck v. Froehlich, 367 Ill. App. 3d 225 (2006), which has absolutely nothing to do with the case at bar.

Of particular interest is that the author of the concurring opinion has not mentioned other subject matter annotations that are precisely contrary to his citation. For example, in American Law Reports (89 A.L.R. 3d 984 (1979)), a section entitled Wills: Condition that Devisee or Legatee Shall Renounce, Embrace, or Adhere to Specified Religious Faith, goes so far as to outline the material that testamentary draftsmen may safely advise their clients with respect to such provisions.

17

1-06-2823)
1-06-2824)
1-06-2843) Cons.

Specifically, section 2b provides: "Modern authority upholds testamentary conditions that a donee embrace or renounce a particular faith, so that in most jurisdictions testamentary draftsmen may safely advise their clients that within limits, such a provision may be included in a will." J. Ludington, 89 A.L.R. 3d §2b at 986 (1979). Similarly, in Illinois Practice (19 R. Hunter, Illinois Practice §188:11 at 176 (5th ed. 2008)), dealing with conditions and restrictions relating to religion, it is stated:

"It is generally held that provisions in a will requiring a beneficiary to renounce, embrace or adhere to a particular religious faith are valid as against the contention that they are contrary to public policy generally or to the specific policy embraced in constitutional guarantees of religious freedom. Similarly, testamentary conditions restricting the beneficiary's marriage to a person of a specified faith or requiring the marriage to be performed according to a particular religious form, or that children of the marriage be educated in such faith or form, are generally upheld."

The concurring opinion reaches out to Shelley v. Kraemer, where the United States Supreme Court held that restrictive covenants prohibiting real property from being used or occupied by any persons except those of the Caucasian race were invalid. In Shelley the covenants were placed upon the real estate by grantors that had no relationship whatsoever with subsequent grantees or grantors. The covenants could affect the transfer of real property from grantors to grantees, neither of which had any relationship with the original creator of the restriction, and would continue for decades, generations and perhaps forever. In the case at bar, we have a man and woman placing restrictions on a gift to their grandchildren and those gifts do not touch upon strangers in the distant future.

18

Moreover, in Shelley, the court understood its limitations and provided that its holding would only provide authority for enforcement by state courts allowing them to refuse to enforce restrictive covenants that violate the equal protection clause of the fourteenth amendment, stating: "That Amendment [fourteenth] erects no shield against merely private conduct, however discriminatory or wrongful." Shelley, 334 U.S. at 13, 92 L. Ed. at 1180, 68 S. Ct. at 842.

The concurring opinion further suggests there are difficulties which face courts in attempting to enforce certain partial restraints. Indeed there are. For example, in matters where there is a question as to whether the beneficiary has "been brought up and educated in the Roman Catholic religion or whether he attended Catholic Sunday school and attended mass at various Roman Catholic churches with 'reasonable regularity' for years," the court would be required to inquire as to whether

the legatee heir performed various religious rites. However, that is not the case here where there is no suggestion that the spouses of the grandchildren are Jewish. In Shapira v. Union National Bank, 39 Ohio Misc. 28, 315 N.E.2d 825 (1974), the Ohio court upheld the provision requiring the son to marry a Jewish girl within seven years of his death and in the event he was unmarried within the seven years to a Jewish girl or married to a non-Jewish girl, the son's share of the estate was to go to the State of Israel.

The Shapira court concluded:

"[it] demonstrates the depth of the testator's conviction. His purpose was not merely a negative one designed to punish his son for not carrying out his wishes. His unmistakable testamentary plan was

19

1-06-2823)
1-06-2824)
1-06-2843) Cons.

that his possessions be used to encourage the preservation of the Jewish faith and blood, hopefully through his sons, but, if not, then through the State of Israel. Whether this judgment was wise is not for this court to determine. But it is the duty of the court to honor the testator's intention within the limitations of law and of public policy. The prerogative granted to a testator by the law of this state to dispose of his estate according to his conscience is entitled to as much judicial protection and enforcement as the prerogative of a beneficiary to receive an inheritance." Shapira,39 Ohio Misc. at 38-39, 315 N.E.2d at 832.

Accordingly, the great weight of authority as to cases which have considered this subject have held such provisions as it appears in the case at bar to be reasonable and not contrary to the state's public policy. The majority places us in the minority of jurisdictions that have considered this issue.

Max and Erla had a dream with respect to the provisions of their will and if you will it, it is no dream.