Neidler, Exrx., *v.* Donaldson et al.

[Cite as Neidler, Exrx., v. Donaldson, 9 Ohio Misc. 208.]

(No. 14709.)

Probate Court of Seneca County.

*Mr. John E. Moyer* and *Messrs. Work, Stacey & Moyer*, for plaintiff.

*Mr. H. G. Stahl*, for defendants.

SCHUCK, J. (sitting by assignment). C. Alva Donaldson died testate on September 15, 1957, survived by his widow, Minnie Donaldson, and the following children: Harry W. Donaldson, Emma May Reep, M. Maudaline Meggitt, George W. Donaldson, and Lena Jeannette Neidler. At the time of his death, part of his assets consisted of real estate owned in fee, real estate owned as tenant in common with his wife, and an undivided interest in real estate owned as tenant in common with his children—the latter being also subject to decedent's life estate in a part thereof.

Decedent's last will and testament, dated November 3, 1955, was admitted to probate in Seneca County, Ohio, on October 18, 1957. Letters testamentary were issued to Lena Jeannette Neidler and Harry W. Donaldson on October 22, 1957. Harry W. Donaldson subsequently resigned as executor and presently serves as guardian of his aged mother who survives, and is a life tenant in the real estate of the decedent, the widow having elected on June 30, 1958, to take under the decedent's will. The remaining executrix filed a petition for construction of the will on April 6, 1966, asking specific direction of the court on seven separately stated questions. The answer of Harry W. Donaldson, one of the defendants, injects issues requesting determination of the legal status and rights of parties who are not defendants in the suit. This court does not think it germane in the present action to interpret or construe the will of William H. Donaldson, or to rule on the enforceability of an alleged agreement by a Robert Donaldson with defendants, as pleaded in said answer; it further not being known to the court whether all necessary parties to make a final determination on such issues are subject to the present action. This opinion will be confined to the issues raised in the pleadings in construction of the will of C. Alva Donaldson.

After the last will and testament of C. Alva Donaldson had provided for payment of debts and expenses, he then devised a life estate to his widow in all of his property, both real and personal. No specific remainder over is stipulated, unless one

arises by innuendo. The issues requiring direction by the court stem from the validity of provisions beginning in the second paragraph of Item 2 of the will, which read as follows:

"As I only have a one-half interest for life in a part of my real estate, it is my wish that my said wife should continue on with the real estate as it now is and that none of my children or their heirs partition for their share of the property in which I now have a life estate, during the lifetime of my wife and their mother, nor after her death, or upon my death should she predecease me. After the death of my wife or upon my death should she predecease me, it is further my will that *all* of my real estate, including the part in which I held a life estate, be sold to our son, Harry W. Donaldson, for the sum of Fifty Thousand ($50,000) Dollars, including his share, if he so desires.

"If my said son elects to take said real estate, the other persons taking the fee in the portion in which I hold a life estate, they and their respective spouses shall sign a quit-claim deed to our said son.

"If any of our children or their heirs refuse to comply with my request, they shall receive one ($1.00) Dollar as their share from the residue of my estate after the death of my said wife or upon my death should she predecease me. If the heirs who held the fee in said real estate in which I have but a life estate comply with my request, my estate shall be divided in equal shares among the heirs of my body, per stirpes."

The only other provision in said will which might affect the issue appears in Item 3, wherein the testator further provides that if Harry W. Donaldson "elect to take *our* real estate," the named executors are directed to execute and deliver a deed to him, "the same as I could do if living."

The court has been assisted by able briefs and arguments by counsel, but no case exactly in point involving the many issues herein has been found, especially as to the right of a testator to condition a devise by restraint of alienation of property he does not own.

It is a fundamental rule of construction not requiring citation of authority that the four corners of the instrument must be searched to determine the intention of the testator, and that the court will sustain the will if at all possible. However, the court cannot make for the testator a will which, for whatever

cause, he himself did not make. A testator further has a perfect right to attach conditions to each and every bequest he makes when rules of public policy or rights of alienation are not involved, if same are sufficiently definite. *Wampler* v. *Bolen*, 28 Ohio Law Abs. 22; *Bender* v. *Bateman*, 33 Ohio App. 66; 5 Page on Wills, p. 396, Section 44.1.

The pleadings and evidence have established that the decedent owned the whole interest in certain real estate in fee; that he owned other real estate as tenant in common with his wife; that he owned an undivided interest in fee in real estate as tenant in common with his children and that part of the latter real estate was further subject to a life estate in the decedent as to property his children had inherited under the will of their paternal grandfather, William H. Donaldson. This testator has attempted by the language in his will to thwart the devise made by the will of William H. Donaldson. *Weeks* v. *Thompson*, 66 Ohio App. 1; 19 Ohio Opinions 277. He has attempted to restrain his children or their heirs in the use of property he did not own, to fix the price at which it could be sold and to specify to whom they must sell if an option is exercised. He has further attempted indirectly to direct the testamentary disposition of property owned as tenant in common with his wife, both as to her and his own interest.

There are numerous questions and legal theories involved in the resolution of the issues herein. The court is initially confronted with the necessity of determining whether the language granting an option to purchase and ensuing sale to Harry W. Donaldson upon exercise of such, constitutes a devise of realty or a bequest of personalty. The precatory words, *"it is my wish," "my request,"* and the option given with direction to the fiduciaries, *"should our said son Harry W. Donaldson elect to take our real estate,"* all negative a finding by this court that there was a mandatory order of conversion so as to make this case fall under the rule of *Ritchey* v. *Johnson*, 30 Ohio St. 288. In the present action the executors are empowered, but not unconditionally directed, to convert land into money. The language does not clearly indicate that testator intended to create a fund out of both real and personal estate and to bequeath a fund as money. At most, the language would retain the character of the real estate, with the legal title descending

subject to divestiture at the time of sale. 41 Ohio Jurisprudence 2d, Section 12, page 552. The conversion contemplated by the testator's will is to occur only upon the exercise of any valid option to purchase, and same was solely discretionary in Harry W. Donaldson personally. Accordingly, the present case is distinguished from *Ritchey* v. *Johnson, supra*, by this court's finding that the law governing the descent of real estate controls herein and not that governing the distribution of personalty. Having so found, a different rule as to the validity of restraints on alienation and postponement of vesting of interests applies. The court must balance the degree of restraint against social utility in order to determine the unreasonableness of restraint. 4 Restatement, Property, Par. 406, p. 2394; 3 Simes and Smith, The Law of Future Interests, Section 1117, page 10. The courts of Ohio appear to have followed the majority doctrine with respect to direct restraints placed by a testator upon property of which *he* is the owner. In *Ohio Society* v. *McElroy*, 175 Ohio St. 49, at page 52:

"This court has held that, where land is devised upon condition that the devisee shall not sell it, such a restraint is void as repugnant to the devise and contrary to public policy."

The court then reaffirmed *Anderson* v. *Cary*, 36 Ohio St. 506 and distinguished restraints in devises for charitable purposes from those passing interests to individuals.

The grave social and economic consequences ensuing from restraints have been the subject of much comment by noted writers.

"Accordingly, we see that the rules against restraints on alienation are designed to prevent at least five social 'evils': (a) obstruction of commerce and productivity; (b) concentration of wealth; (c) survival of the least fit; (d) abuse of creditors; and (e) dead hand control. Not all of these are of equally great significance today. Thus undue concentration of wealth is being dealt with in other ways—notably by means of the graduated estate and income tax structure. And with respect to survival of the least fit, it is not clear that such protection of the weak—if for a limited time—is as much against public policy as the proponents of the rules against restraints suggest. In any event, (a), (d) and (e) are definitely important today, and they constitute the grounds for the present-day policy against restraints. Indeed, (d) achieves increasing significance as the

early American dislike of creditors is more and more dispelled.'' Bernhard, Restraints on Alienation, 57 Mich. L. Rev. 1173 at pages 1180, 1181.

If the public policy of this state is against a testator making devises upon conditions which restrain alienation of property which he owns and has the right to make disposition of as he sees fit, it would appear to be even more repugnant to permit a testator to place disabling or forfeiture restraints upon alienation of property owned by others. This is most certainly a reaching out from the grave by a dead hand to control another's conduct and power of disposition.

This court finds no necessity of making a determination whether the language of the will constitutes a condition precedent (which would postpone vesting) or condition subsequent (which would cause a divestiture). The attempt by this testator to restrain partition is void not only as being against the public policy of this state, but further by reason of the impossibility of performance of the conditions imposed herein.

A devise of real estate subject to a condition precedent which is in its inception or has subsequently become impossible for performance fails, and the property passes under the residuary clause or as intestate estate, as the case may be. 57 American Jurisprudence, Section 1505, page 1019. When a condition subsequent was impossible at the time of the execution of the will or at the testator's death, or when it becomes impossible of performance after the testator's death, the condition is void and the devise discharged and free of the condition. 56 Ohio Jurisprudence 2d, Section 741, page 252. Suppose Minnie Donaldson's undivided interest of a part of the real estate be sold during her lifetime; or a spouse of an heir refuses to sign; or there is an involuntary alienation by an heir due to divorce decree, bankruptcy, creditor action or otherwise. If one heir fails to comply with the conditions and alienates so as to cause a partition of the land, how could the testator's will control a stranger who might purchase an undivided share? If one heir alienates, how can the others comply effectively with the condition? This court believes the condition specified in testator's will to be impossible of performance.

The language contained in the testator's will embodies a double restraint in that it limits alienability to one individual at his sole option and further fixes the price at which the heirs

are to be forced to sell not only their own property, but also that passing to them from their father as well as real estate interests they might inherit from their mother. The court sees no necessity of drawing a fine distinction in this case by holding the condition valid as to property owned solely by decedent, but invalid as to that in which he held an undivided interest. The entire plan devised by him in the use of the language employed to prescribe the condition contemplated no such separation of parcels.

The Restatement on Property, Volume 4, Section 413, provides that pre-emptive provisions are valid only if the restraint itself is valid. At page 2444, it is stated that:

"When, by the terms of the restraint, the price at which the estate must be offered to the designated person is fixed * * * there is substantial curtailment of the alienability of the land. A fixed price is usually set sufficiently low, in the light of possible developments, to enable the designated person to reap the benefits of any increase in value * * * the owner of the estate will be deterred from attempting to sell his property because of the improbability that he will realize the full market value * * *"

The evidence in the instant case suggests the possibility of oil production on the land owned by the heirs of the decedent in common with their father. If such eventuality should occur, it would be patently unfair for the heirs to be compelled to sell the land they own to Harry W. Donaldson at a price fixed in the decedent's will executed in 1955. It is also inequitable to force the heirs of this estate to wait for the death of Harry W. Donaldson to terminate the right to exercise the option or for termination of a life estate of Minnie Marie Donaldson to discover whether the option will in fact be exercised. The will does not contain language extending the option to purchase to the heirs of Harry W. Donaldson, but is a purely personal option granted solely to him. This pre-emptive provision is as much against public policy as any other restraint. 4 Simes and Smith, The Law of Future Interests, Section 1154, p. 60 *et seq.*

Having concluded that the attempted restraint of alienation is void, and is impossible of performance, this court now holds that in the absence of a residuary clause in the will, C. Alva Donaldson died intestate as to the remainder interest in all of his property, both real and personal. *Weeks* v. *Thompson,*

66 Ohio App. 1. Absolutely no words of devise in remainder appear in the testator's will, unless this court construes the words, "the residue of my estate after the death of my wife," to mean an ultimate disposition. As stated in *Crane* v. *Doty*, 1 Ohio St. 279, a testator cannot, by any words of exclusion used in his will, disinherit one of his lawful heirs, with respect to property not disposed of by his will. The request by the decedent is in any event nugatory in effect. Would a conveyance by an heir necessarily be a partition? If one heir conveys his undivided interest or devise and his interest passes to others, the testator's wishes could not be met. This would not preclude the person so conveying from meeting the procedural requirements of executing a quitclaim deed to Harry W. Donaldson if he should elect to exercise an option to purchase, although the deed would in fact convey nothing. Would this then mean that the simple act of signing a quitclaim deed on property which had already passed from the grantor's control would cause the grantor to receive a distributive equal share of decedent's property not limited to a bequest of one ($1.00) dollar? The only injunction by the testator is "against partition," and the language in the will does not cover the possibility of divorce settlements, creditor's suits, bankruptcy proceedings, or other involuntary alienation. The attempt to withhold the power of alienation from a devisee and the attempt to impose a penalty by way of forfeiture for its exercise involve different questions. The former does not affect the title whether the condition be upheld or not. But there are two adverse claimants in a forfeiture for alienation—the one holding subject to the penalty, and the other taking advantage thereof.

A declaration by a testator that his devisee shall have less power to alienate than the law would normally give him is, in almost all jurisdictions, and almost without exception, of no effect. 5 Page on Wills, Section 42.3 *et seq.*

It is a settled rule of construction that a testator is never presumed to die intestate, as to any part of his estate to which his attention was directed. This rule does not apply "when there are no equivocal words to be construed." *Gilpin et ux* v. *Williams et al*, 17 Ohio St. 396. The attempt to limit to the amount of one dollar ($1.00) the share of any heir refusing to sell to Harry W. Donaldson if he elects to purchase, is held to be ineffective since the remainder interest in the land owned

by the decedent passed by intestacy. The testator's will should not be construed so as to deprive any successor in title by operation of law of the freedom of disposition by will or intestate succession. There are but two jurisdictional grounds for sale of real estate by the fiduciary—*i. e.*, payment of debts, and with consent and request of all heirs. Sections 2127.02 and 2127.04, Revised Code. The executrix of C. Alva Donaldson could not now or upon termination of the widow's life estate, bring an action to sell real estate which passed by operation of law since the records show all debts of decedent are paid, unless all heirs requested same. The repugnant provision of forfeiture cannot operate to divest title, for the language of the will did not create an executory limitation, executory devise or shifting use. No remainder interest was created by the will but arose by descent, and this court will not engraft a gift over upon an intestate succession without the moment of devolution being more carefully specified by the testator. 5 Page on Wills, Section 42.7 *et seq.*

Accordingly, the nature of the estate is not held to be conditioned upon the acceptance by the children of C. Alva Donaldson of an invalid will provision which is impossible of performance. The use of the terms "the heirs of my body" will not change the estate created by law so as to establish a fee tail, the same reasons being applicable as to failure of forfeiture of title taken by intestate succession. *Foureman* v. *Foureman*, 79 Ohio App. 351; 35 Ohio Opinions 124.

It is held that upon proper application, this court shall issue a certificate of transfer of the decedent's real estate, conveying an estate to Minnie Donaldson for life and remainder to those who would be the decedent's heirs under Section 2105.06, Revised Code, at the time of decedent's death. *Ohio National Bank of Columbus, Trustee,* v. *Boone,* 139 Ohio St. 361; 22 Ohio Opinions 414; *Smith* v. *Weinkoff,* 80 Ohio App. 206; 35 Ohio Opinions 521; *Kraemer* v. *Hook,* 168 Ohio St. 221. The provision of the will granting a life estate to the widow is held to be valid and she has made an election to take under the will. No effort is made to determine herein the ultimate disposition of personalty owned by decedent, but intestacy also prevails as to same by reason of the will lacking a residuary clause.